McDONALD'S CORPORATION

v.

VICTORY INVESTMENTS, Samuel H. Rappaport, Leon Silverman, Theodore Snyder, and Elias H. Stein.

Appeal of Samuel RAPPAPORT.

No. 83–1192.

United States Court of Appeals, Third Circuit.

Argued Nov. 28, 1983.

Decided Feb. 13, 1984.

Joseph S.U. Bodoff, Jerome J. Verlin (argued), Pincus, Verlin, Hahn, Reich & Goldstein, P.C., Philadelphia, Pa., for appellant.

Mark A. Klugheit (argued), Jonathan L. Braff, Deckert, Price & Rhoads, Philadelphia, Pa., for appellee.

* Hon. William W. Caldwell, United States District Court for the Middle District of Pennsylvania, sitting by designation.

Before GIBBONS, SLOVITER, Circuit Judges, and CALDWELL, District Judge.*

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

Defendant Samuel H. Rappaport appeals from an order entered February 10, 1983 holding him in contempt for failure to pay attorney's fees as earlier ordered by the court, imprisoning him, and ordering him to pay to the Ronald McDonald House the sum of $100 for each day beginning October 18, 1982 that counsel fees were not paid.

### I.

The contempt order was the culmination of a dispute which arose between McDonald's Corporation and two of its landlords, Victory Investments, which owns two buildings in which McDonald's has restaurants, and Samuel Rappaport, who owns a third building. Rappaport is also a partner in Victory Investments. McDonald's sued Victory Investments and Rappaport in the United States District Court for the Eastern District of Pennsylvania alleging they had, *inter alia,* overcharged McDonald's on utility bills in violation of the leases and that Rappaport maliciously cut off electric power to a McDonald's restaurant during peak hours. The dispute was settled on November 16, 1981 after three days of trial, and the settlement agreement was read into the record but not entered as a formal order of the court. The agreement provided, in addition to other undertakings, that the landlords at each location would install a new water meter service in each building which would go only to McDonald's, that Rappaport would rewire the electric system of the building he owned so that the primary service would go directly to McDonald's, and that further disputes relating to the leases would be arbitrated. It provided that McDonald's would give up its claim for past damages and that Rappaport would pay McDonald's $4,500 for utility overcharges. The agreement also provided

for the resolution of a separate foreclosure action then pending in state court, and required payment by defendants of counsel fees with regard to that state court matter.

Less then three months later, on February 11, 1982, McDonald's was back in court seeking to compel performance of the terms of the settlement, because Rappaport had refused to pay the $4,500 to McDonald's on the ground that there had been allegedly excessive counsel fees paid by Victory Investments in the state court foreclosure matter. On March 9, 1982 the district court granted the motion and ordered Rappaport to pay $4,500 plus interest and all counsel fees and costs incurred in preparing the motion. App. at 109a.

On June 21, 1982, McDonald's brought a second motion to compel performance, alleging, among other things, that Rappaport had failed to proffer any evidence of completion of the work required under the settlement. Rappaport thereafter furnished three of the four letters of verification concerning the utility work. On July 16, 1982 the district court ordered the defendants to complete the remaining utility work within five days, to furnish the fourth letter of verification, to reimburse McDonald's for utility overcharges since the time of the settlement agreement, and to pay counsel fees and costs incurred in preparing the motion. App. at 167a–68a. When the defendants did not comply, McDonald's filed a motion on July 23, 1982 to have the defendants held in contempt of the July 16 order. Defendants thereafter complied with the order and McDonald's withdrew the contempt motion.

On September 2, 1982 McDonald's filed with the court two itemized statements of the costs and counsel fees incurred by it in the preparation of the two motions to com-

pel performance. McDonald's also sent the court a letter dated August 30, 1982 stating that "[b]y copy of this letter, copies are being served on defendants' counsel." One statement detailed fees and costs totaling $3,480.74 incurred in connection with Rappaport's failure to comply with the March 9 order which had been directed to him. The other statement covered fees and costs totaling $3,502.62 incurred in connection with the July 16, 1982 order which had been directed to all defendants. On October 14, 1982, the district court, having received no response from the defendants, entered two orders, one directing Rappaport to pay $3,480.74, and the other directing all defendants to pay $3,502.62. App. at 177a–78a. No payment was made as ordered, and on October 27, 1982 McDonald's moved to have the defendants held in contempt of the October 14 orders. In answer to the motion, counsel for defendants alleged that he had never received the itemized statements and believed that the matter had been finally concluded when McDonald's withdrew its first contempt motion.

At the show cause hearing on the contempt motion on December 13, 1982, Rappaport's counsel again stated that he had never received a copy of the itemized statements of fees and costs filed with the court and that defendants had had no opportunity to contest the amount of fees. The court suggested that counsel for McDonald's file a petition to have counsel fees fixed and stated it would "have a hearing [on the counsel fees] and permit the defendant the opportunity to cross-examine and to produce whatever evidence is deemed necessary", App. at 250a, but declined to vacate the orders of October 14 ordering payment of the fees and instead agreed the orders were suspended pending the hearing. App. at 251a–52a.[1]

1. The colloquy, which took on later significance, was:

MR. VERLIN [counsel for defendants]: Are you vacating the Orders for the time being, Your Honor?

THE COURT: What Orders?

MR. VERLIN: The October 14 Orders. The ones that awarded the counsel fees.

THE COURT: No; not until I have a hearing.

MR. VERLIN: You are just suspending them? In other words, nothing further will be done now.

THE COURT: That's right. If I have a hearing and see a reason to vacate those orders, I will.

On December 15, 1982, the court denied McDonald's motion to hold defendants in contempt. McDonald's filed a motion for reconsideration of this order, arguing that under Fed.R.Civ.P. 5(b) "[s]ervice by mail is complete upon mailing," that defendants had maintained a pattern of resisting compliance with the court's mandates and with the terms of the settlement, and that Rappaport had taken no action on receipt of the October 14 orders until McDonald's filed the contempt motion. In reply, the defendants emphasized nonreceipt of the Statement of Itemization of fees and costs, and plaintiff's withdrawal of its initial contempt motion of July 26.

The district court held a hearing on the motion for reconsideration on February 10, 1983. At that hearing, the district court focused on defendants' failure to comply with the order of October 14. When Rappaport's counsel reminded the district court that at the earlier hearing, he "specifically asked [the court] for a specific order, and [the court] said that you were holding it in abeyance," the district court replied "I have no such recollection." App. at 338a. The court stated that "[T]here is no doubt that the October 14 Order was never vacated; there is no doubt that the October 14 Order is still in effect and has been since October 14, and ... that your client has failed to comply with that Order since October 14." App. at 346a. Because it appeared that management of Victory Investments had been entrusted solely to Samuel Rappaport and his management company, the district court directed its order solely to Rappaport. The court ordered that Rappaport was in contempt of the order of October 14, that "[he] shall pay the sum of $3,653.84 plus interest from October 18 [the date of receipt of the October 14 order]" and also that

Defendant Samuel Rappaport shall pay to the plaintiff by draft to the order of Ronald McDonald House $100 for every day that they have failed to pay the plaintiff the amount owed it, beginning with October 18, 1982, and the defendant

shall stand committed until this Order is complied with.

App. at 347a. Rappaport was taken into custody, and after he paid the amounts required under the court's order the same day, the court entered another order which provided that "the defendant Samuel H. Rappaport having purged himself of contempt and having complied with the Court's order, he is released from custody of the United States Marshal." App. at 353a.

## II.

On appeal, Rappaport argues that the contempt order was improper because it was entered without notice having been received by counsel for the defendants, that there was confusion and inconsistency in the sequence of events which prevented him from having the specific and definite notice that is required before a contempt order can be issued, and that the failure to pay the counsel fees in compliance with the order of October 14 was not contemptuous because the court stated at the close of the hearing of December 13 that the orders were being suspended. He also contends that any order to pay fines should have been directed to the partnership rather than to him personally.

We do not reach appellant's contentions with regard to the merits of the contempt order. As we recently held in *In re Establish Inspection of the Metal Bank of America, Inc.,* 700 F.2d 910, 913 (3d Cir.1983), once the contemner has complied with all aspects of the order, it has totally purged itself of contempt. In this case, Rappaport complied with all aspects of the contempt order, since he paid the counsel fee, and does not challenge here the validity of the underlying order to pay the counsel fee. Therefore, as we stated in *Metal Bank,* "[r]eversal of the district court's finding of contempt will thus not provide [the contemner] with any actual, affirmative relief." *Id.* As in that case, "[t]he now purged adjudication of contempt also 'carries with it no possibility of

MR. VERLIN: All right. We can treat them as just suspended for the time being until we have a full hearing.

THE COURT: Yes.
App. at 251a–52a.

collateral deprivation of civil rights or other specifically legal consequences.' " *Id.* quoting from *Marshall v. Whittaker Corp.,* 610 F.2d 1141, 1145 (3d Cir.1979). Although appellant's counsel suggested that a reversal is necessary to ameliorate the "embarrassment and humiliation" which Rappaport suffered, such consequences do not warrant an exception from the general principle that once purged, the contempt order is moot and cannot be reviewed.

For similar reasons, we do not reach the troubling issue as to the availability of imprisonment as a remedy for civil contempt when the contemptuous conduct is not the failure to take action required by court order, *see, e.g., Delaware Valley Citizens' Council v. Pennsylvania,* 678 F.2d 470, 478 (3d Cir.), *cert. denied,* 459 U.S. 969, 103 S.Ct. 298, 74 L.Ed. 280 (1982), but instead is the failure to comply with an order directing payment of money. Both Rule 69 of the Federal Rules of Civil Procedure ("Process to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise") and 28 U.S.C. § 2007(a) ("A person shall not be imprisoned for debt on a writ of execution or other process issued from a court of the United States in any State wherein imprisonment for debt has been abolished") look to the availability of imprisonment for debt in the forum state. Pennsylvania is among the states which have abolished imprisonment for debt.[2]

McDonald's argues, however, that the October 14 order directing payment of counsel fees is not the type of common law judgment traditionally enforced by means of execution but instead is an equitable remedy to restrain the behavior of parties during litigation, *see Hutto v. Finney,* 437 U.S. 678, 695 n. 24, 98 S.Ct. 2565, 2576 n. 24, 57 L.Ed.2d 522 (1978), to which Rule 69 is inapplicable. *See also Usery v. Fisher,* 565 F.2d 137, 139 (10th Cir.1977). Although the use of imprisonment in this context is far from clear, *see* Dobbs, *Contempt of Court,* 56 Corn.L.Rev. 133, 269–74 (1971), we must leave for another day consideration of its appropriateness as well as the interrelationship between Rule 69 and Rule 37(b)(2)(D) and their application to a court order fixing counsel fees and/or costs. Rappaport did not raise this issue below and because the contempt has been purged, the issue of his imprisonment is now moot.

### III.

Unlike the imprisonment, the portion of the district court's order of February 10, 1983 that Rappaport must pay a fine of $100 a day for every day from October 18, 1982 until the attorney's fees were paid is not moot. Assuming *arguendo* that the contempt order does not suffer from the defects which Rappaport asserts, we must still decide whether a fine for civil contempt structured in this manner can be imposed.

■ The dichotomy between criminal and civil contempt lies in the function of the order. The purpose of criminal contempt is to vindicate the authority of the court by punishing past acts of disobedience. *United*

---

2. The Pennsylvania statute provides,

 § 5108. Imprisonment for debt

 (a) Constitutional restriction.—The person of a debtor, where there is not strong presumption of fraud, shall not be continued in prison after delivering up his estate for the benefit of his creditors in such manner as shall be provided or prescribed by law.

 (b) Statutory restriction.—Except in an action for fines and penalties, or as punishment for contempt, or to prevent departure from the Commonwealth, a defendant may not be arrested in any civil matter.

42 Pa.Cons.Stat.Ann. § 5108 (Purdon 1981). Section (a) of the statute is derived almost verbatim from Article I, Section 16 of the Penn-

sylvania constitution. Both the constitutional and statutory provisions "seek to prevent the continuing imprisonment, under civil arrest, of a debtor who has surrendered his assets for the payment of the claims of his bona fide creditors." *Commonwealth v. Mutnik,* 486 Pa. 428, 433–34, 406 A.2d 516, 518–19 (1979). Thus, these provisions seem designed to assist indigent defendants, Comment, *Modern Survival of Imprisonment for Debt,* 37 Yale L.J. 509, 514 (1928), and are arguably not applicable when a contemner who is able to pay willfully violates a court order. Dobbs, *Contempt of Court,* 56 Corn.L.Rev. 183, 272 (1971). It is an issue we do not reach.

*States v. United Mine Workers,* 330 U.S. 258, 302, 67 S.Ct. 677, 700, 91 L.Ed. 884 (1947); *Gompers v. Bucks Stove & Range Co.,* 221 U.S. 418, 441, 31 S.Ct. 492, 498, 55 L.Ed. 797 (1911); *Latrobe Steel Co. v. United Steelworkers,* 545 F.2d 1336, 1343 (3d Cir.1976). None of the parties suggests that the contempt order in this case was criminal, and the procedural safeguards which must precede a finding of criminal contempt were not applied. *See* Fed.R. Crim.P. 42(b).

 In contrast to criminal contempt, civil contempt may be employed to coerce the defendant into compliance with the court's order and to compensate for losses sustained by the disobedience. *United Mine Workers,* 330 U.S. at 304, 67 S.Ct. at 701; *Latrobe Steel,* 545 F.2d at 1344. In the latter instance, a fine may be imposed payable to the complainant, but it must be based upon evidence of complainant's actual loss. *United Mine Workers,* 330 U.S. at 304, 67 S.Ct. at 701; *Quinter v. Volkswagen of America,* 676 F.2d 969, 975 (3d Cir.1982). The fine imposed on Rappaport in this case cannot be considered compensatory. There was no evidence of loss to McDonald's which accrued because the order directing payment of counsel fees had not been obeyed. Indeed, the fine imposed was not even payable to McDonald's but instead to a charitable fund, The Ronald McDonald House, which McDonald's represents is a separate and independent entity over which it has no control.

Thus, the fine of $100 a day from October 18, 1982 which Rappaport paid on February 10, 1983 in order to be released from jail and which totaled $11,400 can be sustained, if at all, only on the basis that it is an appropriate coercive sanction. The principal element of a coercive fine is to provide a disincentive to the defendant for continuing in its refusal or failure to comply with the court's order. As we stated in *Latrobe Steel:*

> Coercive sanctions ... look to the future and are designed to aid the plaintiff by bringing a defiant party into compliance with the court order or by assuring that a potentially contumacious party adheres to an injunction *by setting forth in advance the penalties the court will impose* if the party deviates from the path of obedience.

545 F.2d at 1344 (footnote omitted) (emphasis added). The application of a coercive fine is best illustrated by the Supreme Court's treatment of the fine of $3,500,000 which a district court had imposed on the United Mine Workers for its contumacious nationwide strike in violation of a restraining order and preliminary injunction. The Court held that under the circumstances of that case a fine of $700,000 against the defendant union would not be excessive as punishment for the criminal contempt, but that the remaining $2,800,000 of the fine should have been made conditional on the defendant's failure to purge itself within a reasonable time. *See United Mine Workers,* 330 U.S. at 305, 67 S.Ct. at 702. In this case, the imposition of a fine on February 10 measured by the number of days which had passed in which Rappaport had failed to pay the counsel fees was more akin to a criminal fine than a coercive civil fine. It is evident that the fine was predicated on past acts of contempt rather than on continued failure to obey because it was payable even though Rappaport complied with the court's order on the day the order was issued. Therefore, the imposition of this fine cannot stand.

 We recognize that although Rappaport objected to the imposition of the order in its entirety, he did not raise this particular issue. Although we ordinarily do not reverse the district court on a basis which was not argued before it, *see Singleton v. Wulff,* 428 U.S. 106, 120–21, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976), we may do so when there is fundamental error. *See Hormel v. Helvering,* 312 U.S. 552, 557, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941). We regard this as fundamental.

We do not excuse what appears from the record to have been Rappaport's flagrant disregard of his obligations under the settlement agreement, and his delay in promptly petitioning the district court for

reconsideration of the October 14, 1982 order. Nonetheless, and for the foregoing reasons, we will reverse so much of the district court's order of February 10, 1983 as required the payment of the coercive fine in the amount of $100 a day measured from October 18, 1982 to the date of compliance. Each party will bear its own costs on appeal.