## FAX–EXPRESS, INC.

v.

## Joseph HALT d/b/a Fax Express of Center City and Fax Express of Philadelphia, et al.

### Civ. A. No. 88–2540.

United States District Court, E.D. Pennsylvania.

May 12, 1988.

On Assessment of Damage June 13, 1988.

On Vacation of Arrest Warrant June 29, 1988.

---

**650**

Mark H. Sparrow, Jacobs & Jacobs, P.C., New York City, Richard F. McMenamin, Morgan, Lewis & Bockius, Philadelphia, Pa., for plaintiff.

Andrew S. Price, Bazelon, Less & Price, Philadelphia, Pa., for defendants.

1. Defendant Joseph Halt is not included within the scope of the contempt order. He was dis-

## MEMORANDUM

NEWCOMER, District Judge.

Once again I have before me a motion by plaintiff to hold defendants[1] in contempt. After a review of the evidence presented at a hearing held on Thursday, May 12, 1988 at 9:00 a.m., I find the defendants in civil contempt of this court's orders of March 25, 1988, April 7, 1988 and April 19, 1988.

A brief review of the courts' action in this case thus far would be helpful. On March 25, 1988, this court entered a temporary restraining order enjoining defendants and their agents from using the service marks "Fax Express", "FX Express", "F–X Express" where the hyphen is a fanciful "A", and/or the trade name "Fax Express." After a hearing in open court on April 4, 1988, this court entered a preliminary injunction on April 7, 1988. By order dated April 19, 1988, and again after a hearing in open court, this court issued an order holding defendants Attech Systems Corporation d/b/a Attech Fax Express ("Attech"), FX International, Inc., d/b/a Fax Express ("International") and their officers, agents and employees including Rider R. Lewis, II, in civil contempt. The civil contempt order of April 19, 1988 directed defendants to do the following:

(1) Defendants are required to inform all of its agents by letter that they must comply with the preliminary injunction entered by this court on April 7, 1988. A copy of this letter with a list of its recipients shall be provided to the court within five (5) days from the date of this order;

(2) Defendants shall provide the court with affidavits of compliance from the defendants and all of its agents within twenty (20) days from the date of this order;

(3) Defendants shall pay to the plaintiff $2000.00 per day for every day defendants violate the April 7, 1988 preliminary injunction beginning with the day following the date of this order;

(4) Defendants shall pay all of the plaintiff's costs and reasonable attorney fees

missed from this action by order dated May 12, 1988.

incurred in the prosecution of this contempt order;

(5) Defendants shall pay all of the plaintiff's costs and reasonable attorney fees incurred in attending the March 30, 1988 deposition.[2]

It is important to note that defendants have been provided with proper service and notice of each of the previously mentioned proceedings, and they have chosen not to enter an appearance or participate by way of any form of defense.

■ At the request of plaintiff, this court entered an order on May 5, 1988, directing the defendants to show cause why they should not again be held in civil contempt. This order was served upon defendant by overnight mail on May 6, 1988. Once again a hearing was held in open court on May 12, at 9:00 a.m. without participation of defendants.[3] At this hearing, plaintiffs again offer the credible, clear and convincing evidence of Fax Express President Edward B. Klein and Fax Express Vice President and Chief Financial Officer Jerold I. Wagenheim. Mr. Klein testified that he has spoken to at least eight (8) of defendants' agents who are still identifying themselves as "Fax Express" agents since the court entered its contempt order of April 19, 1988. Similarly, Mr. Wagonheim identified at least fifteen (15) persons that he has spoken with since the courts order of April 19, 1988 who are identifying themselves as "Fax Express" agents and dealers. One agent, David Mortimer, told Mr. Klein that Mr. Rider Lewis had instructed him that it is all right to use the trade name Fax Express anywhere but Philadelphia, Pennsylvania.

In addition, plaintiff continues to get calls from defendants' agents demanding refunds mistakenly under the belief that plaintiff is somehow associated with defendants' business. Equally alarming is the report filed with Dun & Bradstreet, Inc. listing defendants as a company named "Fax Express." (Plaintiff's Exhibit 4) Plaintiffs offered evidence indicating the potential falsity of certain information contained in the report that could severely jeopardize plaintiff's financial reputation if confusion between the companies occurs.

In light of the evidence offered at the hearing and the complete lack of a bona fide effort to comply with the court's orders to date by defendants, I will once again hold defendants in civil contempt. The substantial evidence offered of more flagrant violations justifies the increased severity of the penalties.

I previously stated the law on civil contempt in my April 19, 1988 order. Civil contempt is a separate remedy from criminal contempt. Civil contempt is remedial in nature and serves dual purposes. Courts use civil contempt both to coerce compliance with an order of the court and also to compensate the losses or damages sustained by reason of the noncompliance. *McDonald's Corp. v. Victory Investments*, 727 F.2d 82, 87 (3rd Cir.1984); *Calvin Klein Co. v. Fashion Industries, Inc.*, 221 U.S.P.Q. 81, 83, 1982 WL 123 (D.N.J.1982). To establish civil contempt plaintiff must prove the following elements by clear and convincing evidence: (a) that a valid order of the court existed; (b) that the defendants had knowledge of the order; (c) that the defendants disobeyed the order. *Calvin Klein Co.*, at 83.

Once again I believe plaintiff has met its burden to establish civil contempt. Valid orders of the court existed that were know-

**2.** This finding is also supported by Fed.R.Civ.P. 37(d).

**3.** In the midst of the hearing on May 12, 1988, the court received a special delivery mailing containing a declaration by Mr. Rider R. Lewis. This declaration, authored by Mr. Lewis himself, was apparently submitted in opposition to the current motion for contempt. No one has entered an appearance in this action on behalf of Mr. Lewis, and the declaration states at paragraph nine (9) that Mr. Lewis chose not to make an appearance in this litigation. In spite of this statement, Mr. Lewis' declaration advances various challenges to the litigation such as improper service of process. Mr. Lewis' declaration does not assist or persuade the court because it does not offer facts or legal authority to support his bare assertions. It is questionable whether the court should even consider Mr. Lewis' declaration because no one has entered an appearance on his behalf in this litigation.

ingly violated by the defendants. The increased severity of the fine and the use of conditional incarceration are necessary to coerce compliance with the court's prior orders since the penalties utilized in the prior contempt order resulted in continued noncompliance.

An appropriate order follows.

## ORDER

AND NOW, this 12th day of May, 1988, upon consideration of the plaintiff's submissions and after a hearing in open court, it is hereby Ordered that defendants Attech Systems Corporation d/b/a Attech Fax Express ("Attech"), FX Express International, Inc. d/b/a Fax Express ("International"), Rider R. Lewis, II ("Lewis") and their officers, agents and employees be held in civil contempt of this Court's Orders of April 7th and April 19th.

On April 19th, the Court adjudged defendants Attech and International in civil contempt for violating the Court's Order of March 25th, that Order temporarily restraining said defendants and their officers and agents from the use of the following service marks or trade names: "FAX EXPRESS"; "FX EXPRESS"; AND "F-X EXPRESS" wherein the hyphen is a fanciful "A" (the "names"). Attech and International were further adjudged in contempt for disregarding that portion of the March 25th Order compelling their appearance in Philadelphia for deposition by plaintiff on March 30th.

As a remedial measure, Attech and International were ordered to immediately dispatch a letter to all of their dealer-agents doing business under the enjoined names, advising those agents to comply with the preliminary injunction entered on April 7th. A copy of that letter, with a list of its recipients, was ordered to be tendered to the Court by April 24th. No letter has been received by the Court.

As a coercive measure to induce compliance by defendants with the preliminary injunction, the Court further ordered that, beginning April 20th, defendants shall pay damages to plaintiff in the amount of $2,000 per day for injury to plaintiff's goodwill and reputation being caused by defendants' continued violation of the preliminary injunction. All costs and reasonable attorneys fees incurred in the prosecution of plaintiff's earlier contempt motion were assessed against defendants.

Attech and International continue to disregard this Court's Orders. Based upon the convincing testimony of Messrs. Klein and Wagenheim, the Court finds defendants' agents, and defendants themselves, continue to use one or more of the enjoined names. Contrary to the Court's explicit directive to instruct defendants' dealer-agents to cease the use of the enjoined names, defendant Lewis has advised one such dealer-agent that they are free to use the name "Fax Express". When plaintiff's officers phoned defendants' place of business in California, Mr. Tim Treaster, the person who accepted service of process for Attech and International, answered "FX EXPRESS". Mr. David Mortimer then got on the line and answered questions regarding defendants' dealership network. Mr. Mortimer acknowledged the present action, but opined that no dealers would be sued and that the case was going to be transferred to California because no judge in Philadelphia has jurisdiction over a California company.

Defendant Lewis, as chief executive officer of Attech and International, was and is responsible to see that Attech, International, and their agents obey this Court's orders. Mr. Lewis has represented to others that he is an attorney-at-law. As discussed in the Court's April 19th Order, Lewis has discussed this action with another attorney, Mr. Salmonsen. Mr. Lewis, however, has elected to flaunt the authority of this Court. There is, and can be no excuse for his contempt.

Consequently, I hereby order as follows:

(1) Judgment be entered in the amount of $44,000 against Lewis, Attech and International for the twenty-two days of continuing violation of the preliminary injunction. Additional damages to plaintiff in the amount of $5,000.00 shall begin accruing immediately for each further day defen-

dants or their agents fail to comply with the preliminary injunction and the Court's Order of April 19th. Such additional damages shall be payable jointly and severally by International, Attech, and Lewis;

(2) Defendants Attech, International, and Lewis shall pay all of plaintiff's costs and reasonable attorneys fees incurred in the prosecution of this contempt order;

(3) A bench warrant shall issue for the arrest and imprisonment of Mr. Lewis until such time as the letter, recipient list, and affidavits of compliance, including those of defendants' agents, prescribed in the Court's April 19th Order are received by the Court;

(4) Lewis, Attech and International shall direct their dealer agents to take all reasonable efforts to withdraw telephone listings and telephone advertisements identifying them as supplying services under any of the aforementioned names.

AND IT IS SO ORDERED.

ON ASSESSMENT OF DAMAGES

AND NOW, this 13th day of June, 1988, after notice to all parties and a hearing in open court on the assessment of damages in this case, it is hereby Ordered that damages are established in accordance with the following discussion.

Plaintiff, Fax Express, Inc., brought this action for service mark infringement and unfair competition against Joseph Halt d/b/a Fax Express of Center City (Halt), Attech Systems Corporation (Attech), Rider R. Lewis II (Lewis), and FX Express International Inc. (International). A temporary restraining order was entered on March 25, 1988, and a preliminary injunction was entered on April 7, 1988. Defendant Halt was dismissed from the action by order dated May 12, 1988. Default was entered against the remaining defendants on May 13, 1988 as they have failed to appear or defend in this action in any way.[1] Since a default has been entered in this case, it is now my job to assess the damages based on the evidence before me.

At the hearing held on June 9, 1988, Mr. Jerold I. Wagonheim, plaintiff's vice-president and chief financial officer, testified as to plaintiff's lost profits caused by defendants' trademark infringement and unfair competition. Mr. Wagonheim presented the court with a list of 65 fax express dealers who have unlawfully purchased dealerships from defendants.[2] (Plaintiff's Exhibit 4). Mr. Wagonheim testified that each dealership cost somewhere between $3000.00 to $5,000.00 including a dealership fee and the necessary equipment. Once the cost of the facsimile machine is subtracted, each dealership provides a profit of $2500.00. Mr. Wagonheim stated that this is a conservative figure as it does not include profits from potential sales of equipment, paper supplies or service agreements associated with the dealerships. Consequently, Mr. Wagonheim stated that plaintiff lost $162,500.00 by being deprived the opportunity to sell the 62 dealerships listed on plaintiff's exhibit 4. Mr. Wagonheim testified that plaintiff has lost networking opportunities with these dealers as well. (Plaintiff's exhibits 1–3).

According to Mr. Wagonheim, plaintiff's reputation and good will has been damaged by defendants' actions. The fact that defendants are listed as "Fax Express" in a Dunn & Bradstreet rating is harming plaintiff's credit reputation because defendants have less assets than plaintiff. In addition, defendants are currently being sued by a furniture rental company in California for failure to pay their bills. Confusion in the market place exists as plaintiff continues to get calls from numerous disgruntled individuals and businesses who misunderstand the separate and distinct relationship between plaintiff and defendants' businesses. Finally, Mr. Wagonheim testified that the quality of service among defendants' deal-

---

**1.** This litigation has included two (2) orders holding these defendants in civil contempt of this court's orders. *See* orders dated April 19, 1988 and May 12, 1988.

**2.** The dealer list actually included 72 dealers but plaintiff could not have sold a dealership to 7 individuals in Michigan or Maryland because it has already given exclusive dealing agreements to dealers in those states.

ers is poor which further tarnishes plaintiff's reputation.[3]

Apparently defendants' violations are both willful and continuous despite their notice of the temporary restraining order, preliminary injunction, and two (2) civil contempt orders in this action. Mr. Wagonheim visited defendants' office in California on May 17, 1988 and found an approximately four foot by two foot sign displayed that read "F X Express" in violation of this court's orders. Further, defendants continue to identify themselves as FX Express, FXE or FAX Express on the telephone.

Mr. Wagonheim further testified that prior to June 1, 1988, it has cost plaintiff $72,771.50 in attorneys' fees and $5,814.71 in costs to prosecute this action, accumulating in a total of $78,586.21. It is important to note that the costs and fees in this case were generally increased by the defendants' own unresponsive behavior. The proceedings and filings involved in the findings of civil contempt are perfect examples of avoidable costs made necessary by defendants' behavior.

In light of the foregoing discussion, and based upon all of the information contained in the record as of this date, the damages in this case include:

(1) $162,500.00 for plaintiff's lost profits properly trebled pursuant to 15 U.S.C. § 1117 due to defendants' continued willful and blatant actions totalling $487,-500.00;

(2) $200,000.00 for plaintiff's loss of good will and reputation;

(3) $78,586.21 for attorney's fees and costs expended prior to June 1, 1988;

(4) $44,000.00 for the finding of civil contempt noted in this court's order dated May 12, 1988;

(5) $135,000.00 for the continuing twenty-seven (27) days of contempt of this court's order of May 12, 1988.

In addition, defendants shall deliver to the plaintiff for destruction all materials bearing the name or designations indicated in the permanent injunction below. These materials shall include, but are not limited to, signs, flyers, promotional material, shirts, caps, mugs, newsletters, advertisements and the like. Phone listings servicing "Fax Express," "FX Express," "F–X Express", or "FXE" shall also be disconnected.

It is further ordered that the defendants, their officers, agents, servants, employees, attorneys and all other persons acting in concert or participation with them or on their behalf, are hereby permanently enjoined from in any manner, directly or indirectly:

(a) Using the service marks or trade names "FAX EXPRESS", "FX EXPRESS", "F–X EXPRESS" where the hyphen is a fanciful "A", "FXE", alone or in combination, or any service mark, slogan or symbol confusingly similar to the service mark "FAX EXPRESS" or trade name "FAX EXPRESS INC." in connection with the sale of electronic mail services and/or facsimile equipment;

(b) Using any reproduction, counterfeit copy, or colorable imitation or representation of the service mark "FAX–EXPRESS", or trade name "FAX–EXPRESS, INC.", in whole or in part, in connection with the advertising, promotion or sale of electronic mail services;

(c) Using any logo, service mark or slogan, or promotional materials, which may be calculated to represent or which has the effect of representing that the services of defendants' are sponsored by, authorized by, or in any way associated with plaintiff;

(d) Affixing or applying or annexing or using in connection with the sale of any services, a false description or representation, including words or other symbols, tending to falsely describe or represent such services as originating with plaintiff, or from offering such service in commerce;

(e) Falsely representing itself as being connected with plaintiff or engaging in

---

**3.** For example, Mr. Wagonheim testified that defendants' dealer in Philadelphia did not know how to properly operate its facsimile machine.

any act which is likely to cause the trade and purchasing public to believe that defendant is in any way associated with plaintiff; and

(f) Engaging in any activity which has the tendency to dilute the distinctive quality, or otherwise irreparable harm and damage, the service mark "FAX–EXPRESS" or trade name "FAX–EXPRESS INC."

The $5,000.00 security deposit filed by plaintiff in this action shall be returned to plaintiff immediately. Judgment is hereby entered in plaintiff's favor in the amount of $945,086.21.

AND IT IS SO ORDERED.

### ON VACATION OF ARREST WARRANT

AND NOW, this 29th day of June, 1988, upon consideration of the sworn declarations of Rider R. Lewis II and Elizabeth Jung, it is hereby Ordered that Mr. Lewis' application to vacate the arrest warrant issued in this court's order of May 12, 1988, is GRANTED. The declarations demonstrate that Mr. Lewis has complied and will continue to comply with the conditions imposed by the orders of this court dated April 19, 1988 and May 12, 1988.

AND IT IS SO ORDERED.