OPINION OF THE COURT
HARDIMAN, Circuit Judge.
This appeal involves a bitter fee dispute between lawyers John Peoples and Howard Langer that was borne out of the settlement of an antitrust class action. See In re Linerboard Antitrust Litig., 321 F.Supp.2d 619 (E.D.Pa.2004). The orders at issue were entered by the District Court on July 15, 2008 (First Order) and October 3, 2008 (Second Order). Langer challenges both orders while Peoples appeals only the Second Order. For the reasons that follow, we find Peoples’s appeal entirely without merit. As for Langer’s appeal, we will affirm in part, vacate in part, and remand the case to the District Court *394 for further proceedings consistent with this opinion.
I.
The long and arduous history of this dispute was explained in detail by the District Court in a memorandum accompanying its First Order, In re Linerboard Antitrust Litigation, 2008 WL 2758442 (E.D.Pa. July 15, 2008). Accordingly, we shall recount only the facts and procedural history relevant to these appeals.
The Linerboard class action — which originated from multiple cases filed in Illinois and Pennsylvania — was transferred to the United States District Court for the Eastern District of Pennsylvania, docketed as MDL 1261, and assigned to the Honorable Jan E. DuBois. The Liner-board settlement yielded approximately $60 million in attorneys’ fees, and Judge DuBois appointed Langer as liaison counsel to assist with the fee allocation among class counsel. Liaison counsel was charged with administrative duties such as receiving orders and notices from the Court and circulating them among other counsel in the class, and maintaining files of all documents served upon them so they would be available to all lawyers within the group. See Order of July 14, 2008, In re Linerboard Antitrust Litig., No. 98-05055, 2008 WL 2758167 (E.D.Pa. July 14, 2008) (quoting Judge DuBois’s Practices and Procedures Order of October 4, 2000 ¶ 7); Manual for Complex Litigation § 20.22(Sd) (providing examples of typical liaison counsel duties including “communications between the court and other counsel ... convening meetings of counsel, advising parties of developments in the case, and otherwise assisting in the coordination of activities and positions.”). On June 4, 2004, the District Court amended its order of June 2, 2004 awarding counsel fees to include language retaining jurisdiction over the fee allocation and any related disputes.
On June 23, 2004, Peoples filed a civil action in state court, claiming that Langer breached a contract to pay Peoples a referral fee. After Langer removed the ease to federal court, the parties proceeded to mediation, which resulted in a settlement whereby Peoples agreed to dismiss his case against Langer with prejudice in exchange for $2.94 million, which was paid “from the amount awarded as counsel fees in MDL 1261.” In re Linerboard Antitrust Litig., 2008 WL 2758442, at *3. On July 6, 2004, Judge DuBois entered an order pursuant to the All Writs Act, 28 U.S.C. § 1651 (the All Writs Injunction), enjoining:
all attorneys who participated in any way in MDL 1261 including, but not limited to, John F. Peoples, Esquire ... from taking any further action relating to the allocation of fees in MDL 1261, or the action of liaison counsel in connection therewith, in any court or forum other than the United States District Court for the Eastern District of Pennsylvania.
Id.
Following the settlement, Peoples began making harassing telephone calls to Lan-ger, which prompted Langer to seek relief in federal court. Judge DuBois first signed — but did not enter on the docket— a stipulated temporary restraining order (TRO) that prohibited Peoples from defaming or having any contact with Langer. On September 8, 2005, the TRO was incorporated into an order (the Consent Injunction) which also was signed by Judge Du-Bois, but not entered on the docket.[1]
*395 As time passed, Langer moved the District Court to hold Peoples in contempt for violating the All Writs Injunction and the Consent Injunction. In the First Order, the District Court denied Langer’s motion and sua sponte dissolved both injunctions (as well as the TRO), on the belief that it would soon lose jurisdiction over the ease because the class action was winding down. Following Langer’s motion for reconsideration, the District Court entered the Second Order, which reinstated the All Writs Injunction, but not the Consent Injunction.
On appeal, Peoples claims Judge DuBois erred when he (1) reinstated the All Writs Injunction and (2) failed to recuse himself from the case. In his cross-appeal, Lan-ger claims Judge DuBois erred when he: (1) dissolved the Consent Injunction without considering the correct legal standards; and (2) denied contempt sanctions despite his finding that Peoples violated the All Writs Injunction and the Consent Injunction.
II.
“The standard of review for the authority to issue an injunction under the Anti-Injunction Act and the All Writs Act is de novo.” In re Prudential Ins. Co. of Am. Sales Practice Litig., 261 F.3d 355, 363 (3d Cir.2001) (citation omitted). We review the terms of an injunction for abuse of discretion, underlying questions of law de novo, and factual determinations for clear error. Id. We review all other issues in the case for abuse of discretion. See SEC v. Warren, 583 F.2d 115, 121 (3d Cir.1978) (motion to dissolve injunction); Roe v. Operation Rescue, 54 F.3d 133, 137 (3d Cir.1995) (motion for contempt); Max’s Seafood Café v. Quinteros, 176 F.3d 669, 673 (3d Cir.1999) (motion for reconsideration); In re Antar, 71 F.3d 97, 101 (3d Cir.1995) (recusal decision) overruled on other grounds by Smith v. Berg, 247 F.3d 532, 534 (3d Cir.2001). A district court “abuses its discretion where its decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact.” Danvers Motor Co., Inc. v. Ford Motor Co., 543 F.3d 141, 147 (3d Cir.2008) (internal citation omitted).
III.
In his appeal from the Second Order, Peoples assigns error to the District Court’s reinstatement of the All Writs Injunction. Peoples argues that the District Court lacked subject matter jurisdiction to enter the All Writs Injunction in the first instance, and that there was no basis on which to reconsider its prior vacatur of the injunction. We reject both arguments.
A.
Under the All Writs Act, district courts “may issue all writs necessary or appropriate in aid of their respective jurisdictions.” 28 U.S.C. § 1651(a). This power is limited by the Anti-Injunction Act, which prohibits a federal court from enjoining state court proceedings “except [1] as expressly authorized by Act of Congress, or [2] where necessary in aid of its jurisdiction, or [3] to protect or effectuate its judgments.” 28 U.S.C. § 2283. The “in aid of jurisdiction” exception applies to preclude parallel state in rem proceedings and also authorizes injunctions in “consolidated multidistrict litigation, where a parallel state court action threatens to frustrate proceedings and disrupt the orderly resolution of the federal litigation.” In re *396 Prudential, 261 F.3d at 365 (citation omitted); 17A Charles Allen Wright, ARTHUR R. Miller, Edward H. Cooper, and Vieram David Amar, Federal Practice and Procedure, § 4225 (3d ed.2009). This exception typically is invoked in class actions where proceedings in state court threaten to undermine the pending settlement of a complex MDL case, such as the one involved here. See Grider v. Keystone Health Plan Cent., Inc., 500 F.3d 322, 330 (3d Cir.2007). The relitigation exception — -which authorizes injunctions “to protect or effectuate” judgments — “was designed to permit a federal court to prevent state litigation of an issue that previously was presented to, and decided by, the federal court,” and has also been invoked in class actions. In re Prudential, 261 F.3d at 364. In entering the All Writs Injunction, the District Court relied on both the “in aid of jurisdiction” and relitigation exceptions, stating the injunction was “necessary to effectuate its Order of June 2, 2004 addressing allocation of attorneys’ fees and to prevent disruption of ‘the orderly resolution of the federal litigation.’ ” In re Linerboard Antitrust Litig., 2008 WL 2758442, at *9 (citation omitted).
Peoples emphasizes that he was not a party to the Linerboard action. This fact, while true, is immaterial because the District Court’s authority to enforce its injunctions extends over non-parties. See Pennsylvania v. Porter, 659 F.2d 306, 325 (3d Cir.1981) (power conferred by All Writs Act extends to non-parties who “are in a position to frustrate the implementation of a court order or the proper administration of justice”). Peoples filed his initial fee dispute in state court in June 2004, soon after the District Court ordered Lan-ger to allocate fees among class counsel. Peoples requested that the state court escrow $6 million (10% of the Linerboard fee award) until his claims were resolved. Thus, Peoples’s 2004 suit against Langer directly implicated the res at issue in the MDL case, and threatened to frustrate the orderly allocation of fees pursuant to the District Court’s Orders of June 2 and 4, 2004. Therefore, we hold that the District Court had authority to issue the All Writs Injunction precluding further state court litigation over the allocation of Linerboard fees under both the “in aid of jurisdiction” and the relitigation exceptions to the Anti-Injunction Act.
B.
Peoples next argues that the District Court erred when it granted Langer’s motion for reconsideration and reinstated the All Writs Injunction, contending that his state court case would not interfere with any of the District Court’s orders in Liner-board. We reject Peoples’s argument because his premise is flawed.
A motion for reconsideration may be granted if the movant establishes: “(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [issued the prior order]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice.” Max’s Seafood Café, 176 F.3d at 677 (citation omitted). Here, the District Court relied on Langer’s submission of new evidence to justify reconsideration of the First Order.
In the memorandum accompanying its Second Order, the District Court found that reinstatement of the All Writs Injunction was necessary because Peoples “intends to relitigate the fee dispute in state court if not enjoined from doing so,” which would disturb the allocation of the Liner-board class counsel fee. In re Linerboard Antitrust Litig., 2008 WL 4461914, at *8 (E.D.Pa. Oct.3, 2008). This conclusion was eminently reasonable in light of the following facts: Peoples told a newspaper reporter in July of 2008 that he was pursuing his rightful share of the Linerboard fees; *397 on December 31, 2007, Peoples filed a subsequently-withdrawn complaint against Langer and many other members of class counsel seeking 10% of the total fee; and in September 2008, Peoples sought discovery regarding the allocations made to each member of the Lmerboard class counsel. Given that the $2.94 million already received by Peoples was distributed from the Lmerboard counsel fee pool, Peoples’s attempt to relitigate his fee necessarily threatened the allocation already approved by the District Court and justified reinstatement of the injunction. See In re Prudential Ins. Co. of Am. Sales Practices Litig., (Marra), 314 F.3d 99, 105 (3d Cir.2002) (affirming injunction under All Writs Act where “continued litigation of these claims would ‘unsettle’ what had been thought to be settled” and disrupt procedures approved by the district court).
Peoples contends that the “new evidence” relied on by the District Court in granting the motion to reconsider — that Peoples intended to continue state court litigation against Langer- — could not support a motion for reconsideration because it was already known at the time of the First Order. This argument misstates the District Court’s reasoning. The new evidence was not that Peoples wanted to litigate generally, but rather that the state court action was an attempt to relitigate the allocation of the Lmerboard fee award and not merely a personal dispute with Langer as Peoples had claimed. Because this fact had not been clear to the District Court until it reviewed the new evidence, its reconsideration of the First Order was appropriate.[2]
IV.
In his cross-appeal, Langer claims the District Court erred when it: (1) vacated the Consent Injunction and (2) refused to impose sanctions despite finding Peoples in contempt of court. We address each argument in turn.
A.
In vacating the Consent Injunction, the District Court noted that Peoples had made only one threatening phone call in the three years since it was imposed. After Langer presented evidence of an additional phone call after the First Order, the Court stated in the Second Order: “[t]o the extent Langer believes the latest message is threatening and violates the law, he should report the incident to the police.” Langer argues that the District Court did not apply the proper legal standard for vacating an injunction.
Rule 60(b) authorizes a court to grant relief from a final judgment if “applying [the order] prospectively is no longer equitable” or for “any other reason that justifies relief.” Fed.R.Civ.P. 60(b)(5), (6). In Building and Construction Trades Council of Philadelphia and Vicinity, AFL-CIO v. NLRB, we refused to establish “a rigid, pervasively applicable rule” for modification of an injunction “because equity demands a flexible response to the unique conditions of each case.” 64 F.3d 880, 888 (3d Cir.1995). Instead, we noted factors to consider in deciding whether to modify an injunction, including: the circumstances that led to the entry of the injunction and the nature of the conduct sought to be prevented, the length of time since the entry of the injunction, whether the party *398 has complied or attempted to comply in good faith with the injunction, and the likelihood that the conduct will recur absent the injunction. Id. The District Court’s conclusion that the Consent Injunction was no longer warranted is supported by the relevant factors.
When the Consent Injunction was entered, Peoples had left a series of ten harassing messages on Langer’s voicemail during the time Langer was allocating the Linerboard fee award. The purpose of the Consent Injunction was “to prevent Peoples from interfering with Langer’s fee allocations in MDL No. 1261,” and it was to remain in effect “until the Court is satisfied that there is no longer a need for it.” In re Linerboard Antitrust Litig., 2008 WL 2758442, at *11, *5. The District Court vacated the Consent Injunction on July 15, 2008 “largely because Peoples had not left another telephone message on Langer’s voicemail since June 29, 2006, and had had no further contact with Lan-ger.” In re Linerboard Antitrust Litig., 2008 WL 4461914, at *9 (internal quotation and citation omitted). In essence, the District Court concluded that the Consent Injunction was no longer necessary. Since the harassing phone calls had substantially diminished, the Linerboard counsel fee allocation was complete, and any remaining dispute between Langer and Peoples was primarily of a personal nature, the District Court did not abuse its discretion when it vacated the Consent Injunction and refused to reinstate it.
B.
On July 5, 2006, Langer filed a motion for contempt, alleging Peoples violated the Consent Injunction by placing a phone call to Langer on June 29, 2006. Langer sought prospective coercive sanctions, to be imposed if and only if Peoples were to subsequently violate the Consent Injunction. In March and May 2007, the Court held hearings on the contempt motion at which Peoples revealed that in 2005 he had written a letter to the Disciplinary Board of the Pennsylvania Supreme Court complaining about Langer’s conduct in the Linerboard fee allocation. Peoples also testified that Langer and Judge DuBois had an improper relationship. Specifically, Peoples testified that Langer and “other individuals” led him to believe that Langer could persuade Judge DuBois to settle the fee dispute in Langer’s favor. Contrary to Peoples’s claim, Langer and the “other individuals” testified unequivocally that they made no such representations to Peoples. On February 22, 2008, Langer filed a second motion for contempt, arguing that Peoples had violated the All Writs Injunction by filing an action in state court regarding the Linerboard fee allocation. This time, Langer sought prospective conditional fines, as well as “reasonable and fair attorneys fees for this motion” and “such further relief as this Court deems appropriate.”
In the First Order, the District Court found Peoples knowingly violated the Consent Injunction by virtue of the June 29, 2006 message he left on Langer’s voice-mail, and knowingly violated the All Writs Injunction on October 15, 2005 when he lodged an unsupported complaint against Langer with the Disciplinary Board. Despite these violations, the District Court declined to impose sanctions, concluding that “the Court’s jurisdiction over this dispute will end upon termination of the class action component of MDL No. 1261.... Thus, a prospective fine would be unenforceable by this Court.” In re Linerboard Antitrust Litig., 2008 WL 2758442, at * 17. Langer argues that refusing to impose sanctions after finding that the Orders had been violated was an abuse of discretion.
“Sanctions for civil contempt serve two purposes: ‘to coerce the defendant into *399 compliance with the court’s order and to compensate for losses sustained by the disobedience.’ ” Robin Woods, Inc., v. Woods, 28 F.3d 396, 400 (3d Cir.1994) (quoting McDonald’s Corp. v. Victory Invs., 727 F.2d 82, 87 (3d Cir.1984)). The purpose of a compensatory fíne is to restore the injured party to the position he would have held had the contemnor complied with the injunction. Id. Compensatory sanctions may include the reasonable costs of prosecuting the contempt, including attorneys’ fees. Id. (“[T]he cost of bringing the violation to the attention of the court is part of the damages suffered by the prevailing party”) (quoting Cook v. Ochsner Found. Hosp., 559 F.2d 270, 272 (5th Cir.1977)). A district court has “wide, but not unlimited, discretion in fashioning appropriate compensatory sanctions.” Id. at 401.
The District Court’s authority to enforce the All Writs Injunction and the Consent Injunction continued even after the Liner-board class action terminated. “A district court has the power to enforce an ongoing order against relitigation so as to protect the integrity of a complex class settlement over which it retained jurisdiction.” In re Prudential, 261 F.3d at 367-68. Here, the District Court expressly retained jurisdiction over “all issues relating to the fees and costs of counsel in this action” in its June 4, 2004 Order; under In re Prudential, its authority to enforce the injunction continued even as the class action was winding down. See also Marino v. Pioneer Edsel Sales, Inc., 349 F.3d 746, 753 (4th Cir.2003) (district court had continuing jurisdiction to resolve a dispute as to attorneys’ fees “in order to protect the continued integrity of its order approving fair and reasonable fees in the first instance”). Therefore, the District Court erred when it concluded in the First Order that it would lose jurisdiction over the case once the class action ended. Because the District Court relied on this erroneous conclusion of law in declining to impose civil contempt sanctions, we will vacate that portion of the District Court’s First Order denying Langer’s request for civil contempt sanctions, and remand for reconsideration of Langer’s requests for attorneys fees in connection with past violations.
V.
Finally, we consider Peoples’s appeal from the District Court’s denial of his motion to recuse and his allegations of judicial impropriety against Judge DuBois.[3]
In the District Court, Peoples argued that Judge DuBois had an “appearance of bias and partiality,” arising from an alleged improper relationship with Lan-ger. On appeal, Peoples cites as evidence of an appearance of bias and partiality: (1) Langer’s dual role as liaison counsel and litigant; (2) Peoples’s testimony that “other individuals” told him Langer had influence over Judge DuBois; and (3) judicial acts taken by Judge DuBois.
Section 455(a) of Title 28 of the United States Code provides that a judge “shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.” If a reasonable observer *400 aware of all the circumstances “would harbor doubts about the judge’s impartiality ... then the judge must recuse.” In re Prudential Ins. Co. of Am. Sales Practice Litig. Agent Actions, (Krell), 148 F.3d 283, 343 (3d Cir.1998) (internal quotations and citations omitted). In addition, section 455(b)(1) provides that a judge shall recuse “[wjhere he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding.” Generally, beliefs or opinions requiring recusal “must involve an extrajudicial factor,” U.S. v. Antar, 53 F.3d 568, 574 (3d Cir.1995) (citation omitted), and “opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.” Liteky v. United States, 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994).
Peoples’s argument, devoid of legal citation, that Langer’s role as liaison counsel automatically created an appearance of partiality because “the Court is by definition biased in favor of its own court-appointed surrogates, and by law gives deference to them,” is baseless. Langer’s role as liaison counsel was to coordinate between class counsel and the Court, and to assist in case management. Langer had no power to advise the Court or mediate disputes, nor was he afforded special access to Judge DuBois. Cf. In re Kensington Int’l Ltd., 368 F.3d 289, 297 (3d Cir.2004). The record contains no evidence of “deep-seated favoritism or antagonism” arising from Langer’s administrative role as liaison counsel.
Peoples also argues that his testimony regarding an inappropriate relationship between Langer and Judge DuBois was adequate to support an appearance of partiality and should not have been discounted by the District Court. Peoples gives his self-serving testimony far too much credit. Not only was the testimony unsupported, but it was directly contradicted by three other attorneys, all of whom testified they never made statements to Peoples regarding an improper relationship between Langer and Judge DuBois. “A charge of partiality must be supported by a factual basis,” and recusal is not required based on “unsupported, irrational, or highly tenuous speculation.” In re United States, 666 F.2d 690, 695, 694 (1st Cir.1981). Peoples’s bare allegations were insufficient to raise objective doubts regarding Judge DuBois’s impartiality.
Finally, Peoples’s argument that Judge DuBois’s imposition of the injunctions and purported delay in determining the contempt motion does not establish an appearance of partiality. A litigant’s dissatisfaction with a judge’s rulings does not support recusal. Securacomm Consulting, Inc. v. Securacom Inc., 224 F.3d 273, 278 (3d Cir.2000).
In sum, we conclude that the allegations Peoples leveled at Judge DuBois at the 2007 contempt hearing were spurious. Even worse, both Peoples and his counsel have continued their quixotic crusade on appeal by including unsupported charges and innuendo in the brief filed in this Court. See, e.g., Brief of Appellee and Cross-Appellant Peoples at 8, 28-30, 35-36, In re Linerboard Antitrust, Nos. 08-3493, 08-4453, 09-4524, 2009 WL 4249009 (3d Cir. Mar. 23, 2009). They persist in pressing such allegations on appeal, despite the fact that Judge DuBois explicitly denied the allegations in his Answer to Peoples’ Petition for Mandamus in October 2007, stating that “[tjhere were no ex parte communications between Langer and the undersigned Judge.... Langer has no *401 ‘personal clout with Judge DuBois.’ ” R. 897-98.
Whether borne out of desperation or ethical lapses, we do not take lightly Peoples’s attempts to sully the reputation of a Judge of the United States who has, after over twenty years of distinguished service, earned a reputation for honesty and fairness. Such accusations, even when unfounded as they are here, can undermine the coin of the realm of the judiciary: equal justice under the law and the public’s faith therein. See In re Palmisano, 70 F.3d 483, 487 (7th Cir.1995) (“Indiscriminate accusations of dishonesty ... do not help cleanse the judicial system of miscreants yet do impair its functioning— for judges do not take to the talk shows to defend themselves, and few litigants can separate accurate from spurious claims of judicial misconduct.”). Thus, while parties and lawyers certainly have a right to challenge wayward jurists, they must do so based on facts, rather than reckless speculation. As the Pennsylvania Supreme Court well stated, lawyers “ha[ve] an obligation to obtain some minimal factual support before leveling charges that carry explosive repercussions.” Office of Disciplinary Counsel v. Surrick, 561 Pa. 167, 749 A.2d 441, 449 (2000).
VI.
The learned trial judge correctly noted that Peoples’s grievances against Langer have unnecessarily consumed judicial resources for too long. We commend the District Court for the thorough and patient manner in which it has addressed the issues raised in this litigation, particularly in the face of the spurious allegations leveled against it.
For the reasons stated herein, we will affirm the Second Order in its entirety. In addition, we will affirm the First Order in all respects except for the denial of civil contempt sanctions. We leave that issue to the sound discretion of the District Court on remand.

. Ironically, Peoples argues that the Consent Injunction is not enforceable because it was never docketed, even though it was kept confidential to protect his reputation. As stated in the Consent Injunction itself, Peoples expressly waived any argument that the confi *395 dential nature of the order impaired its validity. In re Linerboard Antitrust Litig., 2008 WL 2758442, at *5 ("IT IS FURTHER ORDERED that John F. Peoples waives any right to contest the issuance of this Order and the right to contest its effect because it has been issued but not entered.”).

. Reconsideration was also appropriate under the “error of law” prong. In the First Order, the District Court mistakenly held that it would lose jurisdiction to enforce the injunctions once the class action component of Lin-erboard ended, and relied upon this conclusion in vacating the All Writs Injunction. The District Court remedied this error of law in its Second Order.

. Langer claims that Peoples's appeal of the denial of his motion to recuse is not properly before this Court because his notice of appeal was untimely as to the First Order and failed to challenge the District Court's order of October 2, 2008 denying recusal. We disagree because we "construe notices of appeal liberally as covering unspecified prior orders if they are related to the specific order that was appealed from.” Tabron v. Grace, 6 F.3d 147, 153 n. 2 (3d Cir.1993). The Second Order was a reconsideration of the First Order and neither the July 14 Order nor the October 2 Order denying recusal became final until the Second Order was entered.