**UNITED STATES of America**

v.

**Patricia HAND, Appellant.**

No. 88–5334.

United States Court of Appeals, Third Circuit.

Argued Oct. 6, 1988.

Decided Dec. 22, 1988.

Harold U. Johnson, Jr. (argued), Adler, Neski, Johnson & Garofola, Millville, N.J., for appellant.

Victor Ashrafi (argued), Asst. U.S. Atty., Edna Ball Axelrod, Chief, Appeals Div. U.S. Atty's. Office, Newark, N.J., for appellee.

Before HIGGINBOTHAM, MANSMANN and GREENBERG, Circuit Judges.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, JR., Circuit Judge.

Appellant pleaded guilty to one count of contempt of court in violation of 18 U.S.C. § 401 (1982). She now appeals the judgment of the district court ordering her, as a special condition of probation, to pay restitution. We will affirm the decision of the district court.

### I.

On February 11, 1987, appellant, Patricia Hand, was chosen to serve as a juror in *United States v. Militello*, a criminal trial involving multiple defendants charged with narcotics violations. Among the seven co-defendants tried was George Pepe, who had been indicted for conspiracy to distribute cocaine in violation of 21 U.S.C.

§§ 841(a)(1), 846 (1982).[1] *See* Appellee's Brief at 5.

After six weeks of testimony, the jury received the case for deliberation on March 27, 1987. During deliberation, which lasted until April 3, 1987, Hand and Pepe had impermissible contact: Pepe gave Hand flowers, they exchanged two or three notes, and Pepe twice telephoned Hand at her residence. The jury returned verdicts of guilty against five co-defendants, found one not guilty, and deadlocked with respect to Pepe. The jury vote on Pepe was 11 to 1 in favor of conviction. Hand was the sole exception.

Hand's conduct was brought to the attention of the trial judge when five co-defendants filed motions for a new trial, claiming that they had been denied due process because of the contacts between Hand and Pepe. The district court granted an evidentiary hearing on their motions. However, two of these co-defendants pled guilty to lesser charges, and withdrew their motions, before the hearing. The court then vacated the verdicts against the remaining three co-defendants after hearing evidence, but they also pled guilty to lesser charges prior to commencement of a new trial. Moreover, Pepe, who had filed a motion for acquittal after the mistrial, withdrew his motion and pled guilty to lesser charges involving his original offense.

As a result of her conduct, Hand pleaded guilty to contempt of court in violation of 18 U.S.C. § 401 (1982). She also agreed to cooperate with the investigation and prosecution of additional charges against Pepe.

In a subsequent trial, she testified against Pepe, who was charged with jury tampering and obstruction of justice in contravention of 18 U.S.C. § 1503 (1982). Pepe was convicted of these charges and sentenced to a $5,000 fine and one year imprisonment.

Hand was later sentenced to a six month jail term, three of which were suspended, two years probation and assessed twenty-five dollars. As a special condition of probation, however, Hand was ordered to pay $46,850 in restitution under authority of the Victim and Witness Protection Act of 1982 ("VWPA" or "the Act"), 18 U.S.C. §§ 3579, 3580 (1982), *redesignated* 18 U.S.C. §§ 3663, 3664 (Supp. III 1985) (eff. Nov. 1, 1987).[2] *See United States v. Hand*, No. 87–201, Judgment and Probation Order (D.N.J. Apr. 8, 1988) *reprinted in* Appellant's App. at 5. This restitution represented losses resulting from Hand's offense that were sustained by the United States Attorney's Office, the Drug Enforcement Agency ("DEA"), and the United States Marshal's Service, calculated as follows: (1) $14,500, which was approximately one-sixth the annual salaries of the two Assistant U.S. Attorneys who prosecuted the *Militello* case for seven weeks of trial and two weeks of trial preparation; (2) $12,000, which was the same fraction of the salaries of the two DEA agents assigned to the case; (3) $20,000 in travel costs and lodging for the U.S. Attorneys and D.E.A. agents; and (4) $350 in witness fees and travel expenses paid by the U.S. Marshal Service. *See* Appellee's Brief at 8. Hand appeals from the judgments of conviction

---

**1.** Eleven individuals had been indicted in this case. Three of these persons pleaded guilty prior to trial and one other opted for a pretrial diversion program that resulted in dismissal of the charges against him.

**2.** Section 3579 in pertinent part provides:

(a)(1) The court, when sentencing a defendant convicted of an offense under this title ..., may order, in addition to or in lieu of any other penalty authorized by law, that the defendant make restitution to any victim of the offense....

(b) The order may require that such defendant—

(1) in the case of an offense resulting in damage to or loss or destruction of property of a victim of the offense—

(A) return the property to the owner of the property or someone designated by the owner; or

(B) if return of the property under subparagraph (A) is impossible, impractical, or inadequate, pay an amount equal to the greater of—

(i) the value of the property on the date of the damage, loss, or destruction, or (ii) the value of the property on the date of sentencing, less the value (as of the date the property is returned) of any part of the property that is returned....

18 U.S.C. § 3579(a)(1), (b)(1) (1982), *redesignated* 18 U.S.C. § 3663(a)(1), (b)(1) (Supp. III 1985) (eff. Nov. 1, 1987).

and sentence imposed against her only on the issue of restitution. We are not, however, persuaded that the court's imposition of sentence constituted any abuse of discretion and, accordingly, we will affirm.

## II.

■ Hand presents three substantive challenges to the district court's order for restitution. First, she contends that the entire restitution order is improper because any damages to the government are remote and speculative. She argues that the "government cannot claim that the results of [the] trial were lost[ ] when, in fact, the presentation of the case caused defendants to plead guilty during and after the completion thereof." Appellant's Brief at 6. Second, Hand asserts that because the DEA agents were witnesses at the trial, she should not be required to pay restitution for their salaries and expenses. Finally, she argues that restitution for the Assistant U.S. Attorneys is improper because the "government did receive some benefit from the trial in question." Appellant's Brief at 8. None of these contentions warrant intrusion upon the district court's judgment.

The damages claimed by the government are neither remote nor speculative. In promulgating the VWPA, Congress intended to "insure that the wrongdoer [be] required to the degree possible to restore the victim to his or her prior state of well-being." S.Rep. No. 532, 97th Cong., 2d Sess. 30, *reprinted in* 1982 U.S.Code Cong. & Admin. News 2515, 2536. While the term "victim" is not defined in the statute, appellate courts have interpreted the congressional mandate to include governmental bodies. *See United States v. Ruffen*, 780 F.2d 1493, 1496 (9th Cir.1986) (county was a "victim" under VWPA since defendant had defrauded its social service agency of welfare payments), *cert. denied* 479 U.S. 963, 107 S.Ct. 462, 93 L.Ed.2d 407 (1986); *United States v. Dudley*, 739 F.2d 175, 178 (4th Cir.1984) ("the government is not foreclosed from establishing that it has been victimized by the crime and recovering restitution" for unlawful use of food stamp coupons). Unfortunately, the dissent speaks of the "U.S. Attorney's Office" as though it were not part of a branch of government and chooses selectively excerpts from the legislative history that do not profess to define the full coverage of the statute.

■ In our view, the U.S. Attorney's Office was as much a victim in this case as was the social service agency in *Ruffen* and the United States Department of Agriculture in *Dudley*. Indeed, in *Dudley*, the Court of Appeals for the Fourth Circuit anticipated and rejected the argument of the dissent by noting:

It does not require great perspicacity to appreciate the substantial difference between *restitution* to the person victimized by the crime (*who could, as here, be another arm of the government bringing the prosecution*, but who, more likely than not, will prove to be a private third party) and *forfeiture*, collectible only by the avenging United States government bent on punishing an offender.

739 F.2d at 177 (emphasis partially added). Certainly, the U.S. Attorney's Office is the "arm of the government bringing the prosecution," and it has no lesser rights than other victims who sustain considerable economic losses. Like most private parties, the lawyers in the U.S. Attorney's Office and the investigatory agents do not work without compensation. When the time for which the government compensated its employees was "lost" because of Hand's illegal acts, it was just as significant a financial loss to the government as when, in *Dudley*, food stamps were stolen and fraudulently used. To paraphrase Abraham Lincoln, a lawyer's time is his stock and trade. When the U.S. Attorney's Office has expended time and resources that are rendered futile, as in this case, by the misconduct of a juror, the financial losses incurred are indistinguishable from those losses that occur when the "stock and trade" of another government agency, such as food stamps in the Department of Agriculture, are misappropriated.

In arguing that the government is not a victim within the meaning of the statute, the dissent relies on testimony given to the Subcommittee on Criminal Law by a retired civil servant who suffered a broken hip as the result of a purse snatching. The dissent contends that the plight of such individuals was the motivation behind Congress recognizing that "too often the victim has been the 'forgotten person' in the criminal justice system." S.Rep. No. 532, 87th Cong., 2d Sess. 10, *reprinted in* 1982 U.S.Code Cong. & Admin. News at 2516. While certainly Congress intended to provide restitution to victims who suffer broken hips when their purses are snatched, there is not a word in the Senate Report to suggest that Congress intended to allow restitution *only* for those individuals who are perceived of as "forgotten persons." The ultimate logic of the dissent is that if General Motors or Chase Manhattan Bank had funds stolen, in violation of federal criminal law, a judge could not require the wrongdoer to pay restitution to those corporations because they do not fall under the penumbra of "forgotten persons" in our capitalistic system. We find that, under the facts of this case, the United States Attorney's Office was a victim, even though it may not be as sympathetic a figure as the aged civil servant who was mugged.[3]

Here, the government was certainly harmed by Hand's conduct since it lost "hard-won convictions of five defendants and a wasted effort to try George Pepe before an impartial jury." Appellee's Brief at 12. While Hand argues that the fruits of the *Militello* trial were not totally vitiated, because the government was able to salvage guilty pleas to lesser charges from the five defendants and Pepe, we disagree with her conclusion that those pleas rendered the government's damages minuscule simply because it "did not have to re-try the original case." Appellant's Brief at 6. The government has lost five original jury verdicts and suffered a mistrial with regard to Pepe. Absent a showing of sufficient evidence to persuade a court that these verdicts would have been overturned and the mistrial would have occurred regardless of Hand's offense, restitution for the government's losses is proper.[4]

Difficulties of measurement do not preclude the court from ordering a defendant to compensate the victim through some restitution. Indeed, Congress instructed that "[i]n those unusual cases where the precise amount owed is difficult to determine, [the VWPA] authorizes the court to reach an expeditious, reasonable determination of appropriate restitution by resolving uncertainties with a view toward achieving fairness to the victim." S.Rep. No. 532, at 31, *reprinted in* 1982 U.S.Code Cong. & Admin. News at 2537. *Cf. Green v. USX Corp.*, 843 F.2d 1511, 1532 (3d Cir.1988) ("'The risk of lack of certainty with respect to projections of lost income must be borne by the wrongdoer, not the victim.'") (quoting *Goss v. Exxon Office Sys. Co.*, 747 F.2d 885, 889 (3d Cir.1984)) (citing *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 51 S.Ct. 248, 75 L.Ed. 544 (1931)). In this case, the government seeks restitution for salaries and expenses of Assistant U.S. Attorneys, DEA agents and U.S. Marshals, since their time and energy was wasted in the *Militello* trial as a result of Hand's conduct. There

---

**3.** We also do not find the dissent's references to *McNally v. United States,* 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), or to the right to a republican form of government helpful for analytical purposes. The dissent fails to recognize that this case concerns a restitution statute that seeks to "restore the victim to his or her prior state of well being." To put the government in its prior state of well being means compensating it for the losses it sustained, which would not have occurred but for the wrongdoer's act. Attorneys' fees and investigators' fees are not speculative items and can be measured with as much specificity as food stamps and welfare payments. The *tangible* aspect in this case is money and not the right to a republican form of government or the right to a fair trial before an impartial jury.

**4.** We need not decide the ultimate reach of the VWPA restitution provision in cases where the defendant has put on persuasive evidence that, regardless of his or her conduct, the verdict would still have been overturned. We only hold that the reach of the VWPA restitution provision is sufficient to cover the facts presently before us.

is no doubt that compensation for such expenditures is permissible under the VWPA, given that Congress desired for offenders "to undue the *financial* harm they have done [their victims]", S.Rep. No. 532, at 30, 1982 U.S.Code Cong. & Admin. News at 2536 (emphasis added). *See also United States v. Johnson*, 657 F.Supp. 358 (D.Conn.1987) (preparer of false tax returns ordered to pay investors restitution for losses incurred from tax penalties and interest).

■ We also reject Hand's argument that she should not be required to pay for the salaries and expenses of the DEA agents because they were witnesses in the *Militello* trial. She relies on *United States v. Kenney*, 789 F.2d 783 (9th Cir.1986), *cert. denied* 479 U.S. 990, 107 S.Ct. 586, 93 L.Ed.2d 588 (1986), in which the court of appeals vacated a portion of a restitution order that required a bank robber to reimburse a bank for the wages of its employees who testified against him at trial. The *Kenney* court reasoned that the cost to the bank of having its employees miss work to testify was a consequence of the robbery, but was not part of any direct harm done to the bank.[5] Consequently, such an expenditure was deemed " 'too remote to form the basis for restitution.' " 789 F.2d at 784 (quoting *United States v. Tyler*, 767 F.2d 1350, 1351 (9th Cir.1985)). In the instant case, however, the DEA agents' testified not against Hand, but against defendants indicted on narcotics charges. Since the fruits of the agents' testimony—five guilty verdicts—were wasted as a direct result of Hand's contact with Pepe, we find that the requisite causal connection exists between the government's injury and Hand's conduct to justify an order for restitution.

### III.

■ Hand contends that the district court violated her sixth amendment right to confrontation by relying "on a simple statement of alleged loses suffered by the government delivered to the defense attorney on the morning of the sentencing, minutes prior thereto." Appellant's Brief at 9. We do not reach this argument, however, because Hand waived the assertion of error by failing timely to object to the presentence investigation report which contained an addendum explaining the method used for calculating restitution.[6] *Cf. United States v. Kail*, 804 F.2d 441, 450 (8th Cir. 1986) (trial court's reliance on presentence report not violative of due process when defendant given the opportunity to contest).

Consequently, Hand's argument, based on *United States v. Ciambrone*, 602 F.Supp. 563, 570 (S.D.N.Y.1984), that § 3580 of the VWPA guaranteed her a hearing on whether the government's claimed expenses flowed directly from her actions and on whether she possessed adequate financial resources to make restitution, must be rejected. There is no absolute right to a hearing under the VWPA. The Act only provides that "[a]ny *dispute* as to the proper amount or type of restitution shall be resolved by the court by the preponderance of evidence." 18 U.S.C. § 3580(d), *redesignated* 18 U.S.C. § 3664(d) (Supp. III 1985) (eff. Nov. 1, 1987) (emphasis added). Unlike defendants in *Ciambrone*, who objected to the government's claimed losses and their ability to make restitution, Hand never objected during the

---

**5.** The court found, however, that the technician's fees paid for removing film from the bank's surveillance camera was "a direct cost of the robbery", thus warranting restitution. *See Kenney*, 789 F.2d at 784.

**6.** During Hand's sentencing hearing, the following exchange occurred between the court and Hand's counsel:

THE COURT: Have you and your client, Mr. Johnson, had an adequate time to review the terms of the presentence investigation report and do you or ... she take any exception to it?

MR. JOHNSON: Your Honor, we have reviewed the presentence report and there is only one minor exception that we take and that is that on page three it lists my client['s] husband's age as 51, he is in fact 45 at this time.

THE COURT: Okay. I'll accept that correction.

MR. JOHNSON: That is the only change that we would ask to be made.

*United States v. Hand*, No. 87–201, Transcript of Sentencing Proceeding at 2 (D.N.J. Apr. 8, 1988), *reprinted in* Appellant's App. at 8.

sentencing hearing. Therefore, the district court properly found that there was no "dispute" warranting a hearing. *Cf. United States v. Pollak,* 844 F.2d 145, 155 (3d Cir.1988) (hearing was necessary because "[t]he district court made only a *conclusory* finding as to appellant's ability to make restitution") (emphasis added).

■ Hand further argues that the district court erroneously placed the sole burden of paying restitution upon her, even though Pepe was equally culpable. In rejecting this contention, we note from outset that as between persons charged with same or similar offenses, "[t]he Constitution permits qualitative differences in meting out punishment...." *Williams v. Illinois,* 399 U.S. 235, 243, 90 S.Ct. 2018, 2023, 26 L.Ed.2d 586 (1970). We also note that Hand's reliance on *United States v. Anglian,* 784 F.2d 765 (6th Cir.1986), *cert. denied* 479 U.S. 841, 107 S.Ct. 148, 93 L.Ed.2d 89 (1986), is misplaced. While holding that the relative culpability of co-defendants is a factor to be considered in a restitution order, the appellate court in *Anglian* admonished "that this opinion should not be read as requiring the consideration of relative culpability in making every restitution order." *Anglian,* 784 F.2d at 768. Moreover, we have held that

> [a]pplication of the restitution provisions of the VWPA will invariably result in some sentencing disparity since the statute authorizes the sentencing judge to consider the particular losses sustained by the victim and the financial circumstances of the defendant.... The individualized focus of the VWPA necessitates the exercise of judicial discretion in the sentencing process. So long as this discretion is properly exercised, however, the mere disparity in sentences under the VWPA does not offend equal protection.

7. We find Hand's argument regarding the New Jersey sentencing criteria uncompelling. This case involves a federal offense and, thus, the sentencing judge was constrained only by the federal guidelines in imposing a sentence.

8. The statute provides that
> [t]he court, in determining whether to order restitution under section 3579 of this title and the amount of such restitution, shall consider

*United States v. Palma,* 760 F.2d 475, 478 (3d Cir.1985). But even if we were to read *Anglian* in the light most favorable to Hand, the fact that the district court placed upon her the sole burden of paying restitution does not suggest that it was oblivious to Pepe's culpability or to the punishment that he had already received. For his part in obstructing justice, another district judge had fined Pepe $5,000 and sentenced him to a significant term of imprisonment. The mere fact that Hand and Pepe received different punishments from different judges does not strike us as irrational or violative of due process and, certainly, did not constitute an abuse of discretion.

■ Hand's final contention is that the district court incorrectly applied federal sentencing guidelines found under 18 U.S.C. § 3553 (Supp. III 1985), as well as New Jersey's sentencing criteria,[7] by failing to take into account mitigating factors, such as the fact that she had no previous criminal history, that she admitted her wrongdoing, and that she fully cooperated with authorities. We find that the court was not bound to consider the factors listed under § 3553 because that statute did not become effective until November 1, 1987, after the events in this case took place. *See* Pub.L. No. 99–217, §§ 2, 4, 99 Stat. 1728 (1985). However, the court correctly applied the VWPA's procedure for issuing an order of restitution by taking into consideration factors it deemed appropriate.[8] Specifically, it considered the mitigating circumstances in this case, as shown in its explanation of Hand's punishment. The court held that

> this sentence is imposed for the purposes of punishment, for the purposes of general deterrence to anyone else who would dream of abusing the sacred authority that they had been given under our laws

the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such *other* factors as the court deems appropriate. 18 U.S.C. § 3580(a) (1982), *redesignated* 18 U.S.C. § 3664(a) (Supp. III 1985) (eff. Nov. 1, 1987) (emphasis added).

to jurors, *while at the same time imposing a penalty for those purposes measured by this defendant's particular entitlement to consideration for her cooperation and for the absence of any criminal conduct.*

*United States v. Hand,* No. 87–201, Transcript of Sentencing Proceeding at 13 (D.N.J. Apr. 8, 1988), *reprinted in* Appellant's App. at 17 (emphasis added).

## IV. *Conclusion*

We conclude that the district court was well within its statutory grant of authority in ordering Hand to pay restitution. Moreover, we find that it committed no constitutional or procedural violations in imposing sentence. Accordingly, we will affirm the judgment of the district court.

MANSMANN, Judge, dissenting.

I respectfully dissent from the opinion of the majority because there are threshold issues not addressed which, to me, are clearly dispositive of the government's claim to restitution for property loss under the Victim and Witness Protection Act, 18 U.S.C. § 3579 [redesignated § 3663]. In summary, I would hold that where the offense is criminal contempt of court, it is the court who is the victim, not the U.S. Attorney's Office—which is not even the type of victim envisioned by the Act. Assuming arguendo that the government is a victim here, the injury suffered by the prosecution is at best the intangible right to a tamperfree trial and *not* the attorney's fees and costs of an aborted criminal trial. Further, the property loss contemplated by the Victim and Witness Protection Act is concrete, physical property, such as actual items and money, or expenses such as medical and hospital bills, and not an intangible. For these reasons and because the decision of the majority upholding the district court's order of restitution comes dangerously close to saying that the cost of a criminal trial can be accorded to the government, I respectfully dissent.

## I.

It is generally understood that criminal contempt "is punitive in character; it is aimed at vindicating the court's authority in the face of contumacious and disrespectful acts." *In re Grand Jury Proceedings Harrisburg Grand Jury,* 658 F.2d 211, 217 (3d Cir.1981), and, *Latrobe Steel Co. v. United Steelworkers,* 545 F.2d 1336 (3d Cir.1976). The statutory provision codified at 18 U.S.C. § 401 (1982) states that

A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;

(2) Misbehavior of any of its officers in their official transactions;

(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

Hand's behavior clearly fell within § 401(1).[1] Equally clear is the principle that "a court may uphold respect for the law through the utilization of the criminal contempt process." *Latrobe Steel,* 545 F.2d at 1347.

I do not dispute that Hand's actions were in contempt of a clearly stated court directive not to contact anyone involved in the trial, however, I do dispute the determination that the prosecution was a victim of these actions. Our cases repeatedly hold that the "purpose of criminal contempt is to vindicate the authority of the court by punishing past acts of disobedience." *McDonald's Corp. v. Victory Investments,* 727 F.2d 82, 86 (3d Cir.1984) (emphasis added); *Latrobe Steel,* 545 F.2d at 1343; and *United States Steel Corp. v. Fraternal Ass'n, etc.,* 601 F.2d 1269, 1273 (3d Cir.1979). Therefore, under the concept of criminal contempt as we know it and as it is expressed in § 401, the Justice Department is not the victim for § 3579 [§ 3663] restitution.

---

**1.** At the sentencing hearing, the district judge stated: "The contempt is based upon her failure to obey my order given to all the jurors—judges do I suppose in every case—not to talk to any-

body; and if ever anybody approaches you, that you are to report to the judge, which she did not do." Transcript of Sentencing Hearing, Crim. No. 87–201–001, at 8 (D.C.N.J. April 8, 1988).

## II.

A review of the legislative history of the Victim and Witness Protection Act indicates that the purpose behind the Act was to

> Strengthen existing legal protections for victims and witnesses of federal crimes; ... to amend title 18 of the United States Code to require restitution for crimes including loss of property or personal injury; ... to require the Attorney General to prepare guidelines for the fair treatment of victims of federal crimes; and to require that the Attorney General recommend legislation requiring that restitution be made to the victim before a federal felon may profit from his crime's notoriety.

S.Rep. No. 532, 97th Cong., 2d Sess. 9 *reprinted in* 1982 U.S.Code Cong. & Admin.News 2515. Pursuant to the Act, the Attorney General, through the Department of Justice, developed the Guidelines for Victim and Witness Assistance which became effective July 9, 1983. The application of the internal guidelines was defined as follows:

> These guidelines apply to those components of the Department of Justice engaged in the detection, investigation or prosecution of crimes. They are intended to apply in all cases in which *individual* victims are adversely affected by criminal conduct or in which witnesses provide information regarding criminal activity ... Under these guidelines, special attention should be paid to victims and witnesses who have suffered physical, financial or emotional trauma as a result of violent criminal activity.

48 Fed.Reg. 33774–75 (1983) (emphasis added).

During the hearings held by the Subcommittee on Criminal Law, one victim testified to a situation which was described as being "all too typical." A retired civil servant suffered a broken hip as the result of a purse snatching. She cooperated completely with the law enforcement agencies despite her serious injuries which cost over $10,000 to treat. She later learned of the disposition of the case when she was notified that a $350.00 check in the order of restitution was being held for her at the probation office. It appeared that no one involved in the plea negotiations with the defendant in her case had contacted her nor had anyone been aware of the extent of her injuries. The report stated: "This story is typical of the casual way restitution is being used in all our courts." U.S.Rep. No. 532, 97th Cong., 2d Sess. 30–31, *reprinted in* 1982 U.S.Code Cong. & Admin.News at 2536–37. The premise behind § 3579 [redesignated § 3663] "is that the court in devising just sanctions for adjudicated offenders, should insure that the wrongdoer make good[ ], to the degree possible, the harm he has caused his victim." *Id.*

Keeping in mind the purpose behind restitution, *i.e.*, to restore the victim to his former state of well being, the emphasis found in the legislative history on personal injury compensation and restoration of property convinces me that the U.S. Attorney's Office is not the type of victim envisioned by Senators Heinz and Laxalt when they introduced S. 2420 on April 22, 1982. As the introductory language of the Senate report warned, "too often the victim has been the 'forgotten person' in the criminal justice system. With few exceptions, victims and witnesses are either ignored by the criminal justice system or simply used to identify offenders." S.Rep. No. 532, 97th Cong., 2d Sess. 10, *reprinted in* 1982 U.S.Code Cong. & Admin.News at 2516. Clearly, the U.S. Attorney's Office, which has the authority of the federal government behind it, cannot be said to be the "forgotten person."

I appreciate the majority's reliance upon *United States v. Ruffen*, 780 F.2d 1493 (9th Cir.), *cert. denied*, 479 U.S. 963, 107 S.Ct. 462, 93 L.Ed.2d 407 (1986) (county was a "victim" under VWPA since defendant had defrauded its social service agency of welfare payments) and *United States v. Dudley*, 739 F.2d 175, 178 (4th Cir.1984) ("the government is not foreclosed from establishing that it has been victimized by the crime and recovering restitution" for

unlawful use of food stamp coupons) which show that other courts of appeals have found that the government can be a victim for purposes of the Act.

I recognize that the government can be considered a victim where property loss occurs. Here that just did not happen. Indeed the majority's reliance on *Ruffen* and *Dudley* emphasizes my point. The losses suffered by the government in those cases were *tangible* losses in the form of money payments. Clearly, these do not in any way equate to the loss of the right of a trial before a fair and impartial jury suffered by the government here.

### III.

Even if it must be accepted that the government was a victim here because the court, *i.e.*, judiciary, and the prosecution, *i.e.*, executive, are but branches of the same government, *see Ex parte Virginia*, 100 U.S. 339, 25 L.Ed. 676 (1880) (the state acts through its legislative, judicial and executive authorities), or that the government was an indirect victim not envisioned by the framers but covered by the language of the Act, the type of injury suffered is too remote to reduce to a monetary value. The section of the Victim and Witness Protection Act dealing with the loss of property provides as follows:

> (b) ... (1) in the case of an offense resulting in loss or destruction of property of a victim of the offense—
> (A) return the property to the owner of the property or someone designated by the owner; or
> (B) if return of the property under subparagraph (A) is impossible, impractical, or inadequate, pay an amount equal to the greater of—
> (i) the value of the property on the date of the damage, loss, or destruction, or

> (ii) the value of the property on the date of the sentencing, ...

18 U.S.C. § 3579 [redesignated 3663].

The majority addressed this contention extensively, but focused on the harm as the loss of a trial and concentrated on what that trial cost. However attractive this simplistic method may appear, it is dangerous because of its simplicity. What the government lost due to Hand's actions was the right to a tamper-free trial; a trial in which open-minded jurors listened to the evidence, weighed the facts and reached an impartial conclusion based on those facts.

In his remarks at the sentencing hearing, the district judge expressed anger for Hand's inaction in failing to report the improper communications which had a devastating effect, likening it to "a cancer that she implanted in the judicial system. Treachery to her oath as a juror." [2] Thus, what the prosecution—as well as the other defendants—lost was the right to a fair trial before an impartial jury. This is an intangible right, such as the right to a republican form of government, which cannot be characterized as property. *Cf. Baker v. Carr*, 369 U.S. 186, 209, 82 S.Ct. 691, 705, 7 L.Ed.2d 663 (1962) (complaints based on the clause guaranteeing a republican form of government are nonjusticiable). A recent Supreme Court case in an analogous situation regarding the concept of property underscores the notion that certain types of intangible rights may not, unless Congress clearly and specifically mandates it, be the basis of an injury. In *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), the Court noted that while the mail fraud statute clearly protects property rights, it "does not refer to the intangible right of the citizenry to good government." 107 S.Ct. at 2879. *Compare Carpenter v. United States*, 484 U.S. 19, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987)

---

**2.** Sentencing transcript at 9. The judge also stated:

> It undermined the sacrifices of her fellow jurors in that long trial and their, I'm sure, conscientious efforts to fulfill and comply with their duties as jurors and the time and sacrifices that were represented by sitting on

that long trial as a juror. Indifference to them, indifference to every defendant in that case who was entitled to a fair trial and to a jury comprised of jurors complying with their clear and unambiguous oath and obligation. *Id.*

(the Wall Street Journal has a property right in keeping confidential any information which is to appear in forthcoming column), *with McNally, supra.* Just as the citizens of this country are entitled to a republican form of government, *see* U.S. Const., art. IV § 4, they are also guaranteed a public trial by an impartial jury, *see* U.S. Const., amends. 6, 7 & 14, but this is not to say that monetary value can or should be placed on that right. *Cf. McNally, supra; United States v. Evans,* 844 F.2d 36 (2d Cir.1988) (the government's interest in regulating foreign resale of weaponry is not a property right under mail and wire fraud statute); *and United States v. Zauber,* 857 F.2d 137 (3d Cir.1988) (claim that pension fund trustees violated mail and wire fraud statute by defrauding fund of honest and faithful employees does not support property loss requirement of statute).

### IV.

I agree with the outraged district court and with the majority here that what Patricia Hand did as a juror was despicable and very wrong—contemptuous of the court— but it did not result in the type of damage to property or to a victim which the Victim and Witness Protection Act was enacted to protect. Therefore, I would vacate the district court's order requiring the payment of $46,850 in restitution to the government.[3]

---

**3.** Although this is a matter not raised by Hand on appeal, I am also concerned that the transcript of the district court's hearing made no mention of any finding of Hand's ability to pay the amount. In *United States v. Palma,* 760 F.2d 475 (3d Cir.1985) we directed the "district courts in the future to make specific findings as to the factual issues that are relevant to the application of the restitution provisions of the VWPA." 760 F.2d at 480. *See also United States v. Pollak,* 844 F.2d 145 (3d Cir.1988). The sentencing transcript is devoid of any references with regard to Hand's ability to pay.