

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-13-1994

# Gov't V.I. v. Davis

Precedential or Non-Precedential:

Docket 93-7299

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"Gov't V.I. v. Davis" (1994). *1994 Decisions.* Paper 219.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/219

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 93-7299 and 93-7300
_____


GOVERNMENT OF THE VIRGIN ISLANDS

vs.

ASTARTE DAVIS,

Appellant, No. 93-7299


UNITED STATES OF AMERICA

vs.

RICE, ASTARTE

Astarte Davis,

Appellant, No. 93-7300

_____


APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF THE VIRGIN ISLANDS

(D.C. Criminal Nos. 88-00132 and 88-00403)

_____


ARGUED DECEMBER 1, 1993

BEFORE:  MANSMANN, HUTCHINSON, and LEWIS, Circuit Judges.

(Filed December 13, 1994)

_____

Thurston T. McKelvin (ARGUED)
Office of the Federal Public Defender
Post Office Box 1327
Charlotte Amalie, St. Thomas
USVI  00804-1327

          Attorney for Appellant

David M. Nissman (ARGUED)
Office of the United States Attorney
1108 King Street, Suite 201
Christiansted, St. Croix
USVI  00820

          Attorney for Appellee

_____

OPINION OF THE COURT

_____


LEWIS, Circuit Judge.

          On December 21, 1988, Astarte Davis was charged in a 28-count information with forgery, grand larceny, perjury, obtaining money under false pretenses, filing false documents, maintaining a fraudulent civil action, preparing false evidence and making false statements to the government in Government of the Virgin Islands v. Astarte Davis, D.C. VI Crim. No. 88-132 (the "V.I. Case").  Davis was also indicted on five counts of mail fraud in United States v. Astarte Davis, D.C. VI Crim. No. 88-403 (the "U.S. Case").

          On October 10, 1991, Davis pleaded guilty to Counts One (Conspiracy to Defraud, in violation of Virgin Islands Code, Title 14, Section 551); Two (Forgery on Real Property Deed, in violation of Virgin Islands Code, Title 14, Section 791(1));

Twenty-Four (Offering False Evidence in a Civil Case, in violation of Virgin Islands Code, Title 14, Section 1504); Twenty-Five (Perjury, in violation of Virgin Islands Code, Title 14, Section 1541); and Twenty-Six (Selling Property Obtained Unlawfully, in violation of Virgin Islands Code, Title 14, Section 2101(a) in the V.I. Case; and Count Two (Mail Fraud, in violation of United States Code, Title 18, Section 1341) of the indictment in the U.S. Case. Davis also pleaded guilty to Making False Statements in violation of 18 U.S.C. § 1001 (§ 1001) and Failure to Appear in violation on 18 U.S.C. § 3146 (§ 3146).[1]

Both the V.I. Case and the U.S. Case involved Davis' efforts to defraud the estate of James Merrills Rice (Rice estate) of more than one million dollars worth of real and personal property.[2] Specifically, Davis prepared a false and fictitious last will and testament of James Rice purporting to bequeath to her the bulk of the Rice Estate; altered Rice's power of attorney, giving herself full and complete control over his property, assets and affairs; and prepared a false warranty deed for the purpose of facilitating the transfer of valuable realty owned by Rice to herself. Using the forged documents, Davis transferred title for or otherwise unlawfully appropriated or

---

[1]. These charges stemmed from two related cases: D.C. VI Crim. Nos. 88-133 and 91-30.

[2]. James Rice was Davis' alleged common-law husband who disappeared in July 1986. The government's theory was that Davis either murdered Rice or took advantage of his disappearance in order to convert his assets.

conveyed personal property belonging to Rice which was valued at more than $120,000. Davis also forged Rice's signature on a series of checks which totalled $10,985 and entered into contractual agreements concerning Rice's boat, the Fish Eagle, assigning to herself a percentage of the profits earned by the venture.

In addition to the other illegal activities Davis stood convicted of by virtue of her plea in the V.I. Case, she filed a lawsuit against a number of entities and individuals, including Rice, to quiet title to property she had fraudulently obtained. In preparation for that lawsuit, Davis forged letters, deeds and other documents to make it appear as though James Rice was alive and that he had given all of his worldly possessions to her and her sons. Davis presented the false documents at a deposition during which she also gave false testimony.

With respect to the U.S. Case, Davis prepared forged documents instructing the Guardian Savings Bank in Houston, Texas, to transfer two one hundred thousand (100,000) dollar certificates of deposit into an account held by the Icon Corporation, which was wholly-owned by Davis and her sons.

As a result of her guilty pleas, on January 31, 1992, the District Court of the Virgin Islands, Division of St. Croix, sentenced Davis to 10 years imprisonment and five years probation in connection with the V.I. Case, and 15 months imprisonment in

connection with the U.S. Case.[3]  In addition, the court ordered her to pay restitution in the amount of $547,000.[4]

Following the district court's denial of her motions for reduction of sentence and for reconsideration, Davis appealed, claiming that the district court had failed to make specific findings with respect to:  (1) the amount of loss sustained by the Rice estate as a result of the offenses; (2) her own financial resources and the relationship between the amount of restitution imposed, and (3) any loss caused by the underlying offenses for which she was convicted.  Upon the government's request, we remanded the case for additional fact-finding in connection with the district court's restitution order. Government of the Virgin Islands v. Davis, Nos. 92-7472, 92-7473 and 92-7474 (3d Cir. Jan. 20, 1993).

On remand, the district court conducted an evidentiary hearing and reduced the amount of restitution from $547,000 to $297,246.78.  Of the total amount, $229,282.78 was awarded pursuant to Title 5, Virgin Islands Code, § 3721 (1993) (V.I.C. § 3721 or V.I. restitution statute), and the remaining $67,964 was awarded under the Victim and Witness Protection Act (VWPA), 18 U.S.C. §§ 3663-3664.  Davis now appeals the modified

---

[3].  Davis also received a two-year sentence for the § 1001 violation.

[4].  The presentence report indicated that the proper amount of restitution owed to the victim -- the estate of James Rice -- was $1,812,000.00.  Both Davis and the government agreed that the figure was too high and stipulated to the reduced amount.

restitution order.  We have jurisdiction over this appeal

pursuant to 28 U.S.C. § 1291.

I.

Davis raises three issues on appeal:  (1) that the

district court erred by including legal fees which the Rice

estate incurred to recover funds which Davis had fraudulently

obtained, as well as lost interest, in her obligation to the Rice

estate; (2) that the district court erred in finding that she had

the present or future means to comply with the restitution order,

and (3) that the district court improperly ordered restitution

under the V.I. restitution statute.[5]

Our review of whether a district court correctly

imposed an order of restitution is bifurcated:  we exercise

plenary review over whether the award is permitted under law, but

we review the amount of the award for abuse of discretion.

United States v. Badaracco, 954 F.2d 928, 942 (3d Cir. 1992).

Because we conclude that restitution ordered pursuant

to the VWPA may not include legal expenses, we will reverse the

district court's inclusion of $27,964 in such fees in the amount

of restitution ordered under the VWPA.  We will, however, affirm

the district court's order with respect to the inclusion of

interest, and will likewise affirm the award made pursuant to the

V.I. restitution statute in its entirety.

---

[5].    Davis further contends that the district court erred by
admitting as evidence at sentencing the affidavit of Kathleen
Clements, James Rice's daughter and the court-appointed executor
of the Rice estate.  We have considered this argument and find it
to be without merit.

## II.

We first address Davis' assertion that the district court improperly included legal fees and lost interest in her restitution obligations to the Rice estate.

### A.

As the government correctly points out, the restitution award in the V.I. Case was ordered pursuant to the V.I. restitution statute and not the VWPA. That point, which Davis fails to recognize, defeats her argument with regard to the $95,997.78 in legal expenses included in the restitution ordered in the V.I. Case. This expenditure by the estate arose from the fraud Davis had perpetuated on it, and was incurred in the estate's effort to recover losses it had sustained as a result of the offenses to which Davis pleaded guilty. The V.I. restitution statute provides that "the court shall require restitution <u>designated to compensate the victim's pecuniary loss resulting from the crime to the extent possible</u> . . . ." 5 V.I.C. § 3721 (emphasis added). We believe that the district court appropriately included legal fees in the order of restitution made pursuant to the V.I. restitution statute because the expenses clearly represent pecuniary losses incurred by the estate, and these losses are directly attributable to Davis' crimes against the estate.

### B.

The amount of restitution ordered in the U.S. Case included compensation for legal expenses incurred by the Rice estate in litigation to recover the balance of the funds in

Rice's account in the Guardian Savings of Houston, Texas.

Guardian Savings had frozen Rice's account after discovering that

Davis had fraudulently withdrawn two certificates of deposit,

each worth one hundred thousand (100,000) dollars, and deposited

them into an account held by the Icon Corporation.

In defining the substantive boundaries of compensation
in cases where restitution is ordered for offenses resulting in
the loss of property, § 3663(b)(1) of the VWPA provides:

> (b)  The order may require that such
>       defendant --
>
> (1)  in the case of an offense resulting
>       in damage to or loss or destruction
>       of property of a victim of the
>       offense --
>
> (A)  return the property to the
>       owner . . .; or
>
> (B)  if return of the property
>       under subparagraph (A) is
>       impossible, impractical, or
>       inadequate, pay an amount
>       equal to the greater of --
>
> (i)  the value of the property
>       on the date of the
>       damage, loss, or
>       destruction, or
>
> (ii) the value of the property
>       on the date of
>       sentencing, less the
>       value (as of the date the
>       property is returned) of
>       any part of the property
>       that is returned.

This section has been construed to authorize
"restitution in an amount pegged to the actual losses suffered by

the victims of the defendant's criminal conduct." United States v. Barany, 884 F.2d 1255, 1260 (9th Cir. 1989). Furthermore, the obligation must be based upon losses directly resulting from such conduct. Id. at 1261 (emphasis added).

Most courts which have analyzed the meaning of "losses directly resulting" from the offense have interpreted this language narrowly. In fact, the Fourth, Fifth, Seventh and Ninth and Tenth Circuits have specifically held that restitution under the VWPA cannot include consequential damages such as attorneys' fees. See United States v. Mullins, 971 F.2d 1138, 1147 (4th Cir. 1992) (holding that an award of restitution under the VWPA cannot include attorneys' and investigators' fees expended to recover the lost property); United States v. Mitchell, 876 F.2d 1178, 1184 (5th Cir. 1989) (holding that restitution of attorneys' costs expended to recover from an insurance company are not authorized by the VWPA); United States v. Arvanitis, 902 F.2d 489, 497 (7th Cir. 1990) (holding that restitution for consequential damages, such as legal fees expended to investigate a fraudulent insurance claim, are not available under the VWPA); Barany, 884 F.2d at 1261 (holding that attorneys' fees and costs spent to defend against a civil suit are not recoverable under the VWPA); and United States v. Patty, 992 F.2d 1045, 1049 (10th Cir. 1993) (holding that attorneys' fees incurred by victim to recover his property are not directly related to the defendant's criminal conduct and are thus not recoverable in restitution under VWPA).

The government argues that our decision in United States v. Hand, 863 F.2d 1100 (3d Cir. 1988) is directly on point, and requires us to conclude that the inclusion of attorneys' fees represents a legitimate means of accomplishing the far-reaching principles underlying the VWPA.  In Hand, we upheld an award of restitution which, in part, compensated the United States Attorneys' Office for time and resources spent prosecuting a case which resulted in a mistrial because of juror misconduct.  Hand, 863 F.2d at 1103.  Although at first glance our decision in Hand arguably appears to control the issue of whether legal expenses may be included in a restitution award made under the VWPA, as we explain below, the facts of Hand were unique and are distinguishable from the matter before us.  Moreover, despite our reliance in that case on comments in the legislative history which the government believes supports its position here, those comments can only be considered dicta, although we hasten to note that the conclusion we reach here is actually consistent with the result we reached in Hand in any event.

Patricia Hand was a juror in United States v. Militello, a complex narcotics conspiracy case involving multiple defendants.  During the seven-week trial, Hand and one of the defendants, George Pepe, developed a personal relationship.  The jury returned guilty verdicts against five co-defendants, found one not guilty, and deadlocked 11 to 1 in favor of conviction with respect to Pepe.  Hand was the only juror who did not vote for Pepe's conviction.  Hand's conduct was brought to the

attention of the trial judge when the five co-defendants whom the jury had convicted filed motions for a new trial, claiming that they had been denied due process because of improper contacts between Hand and Pepe.  Two of the co-defendants withdrew their motions and pleaded guilty to lesser charges, and the court vacated the convictions of the other three.

Hand subsequently pleaded guilty to contempt of court in violation of 18 U.S.C. § 401.  As a special condition of her sentence, she was ordered to pay $46,850 in restitution, approximately $35,000 of which represented losses sustained by the United States Attorneys Office as a result of Hand's misconduct.  Hand appealed the restitution order and we affirmed. In concluding that the damages claimed by the government were neither remote nor speculative, we relied primarily on the legislative history of the VWPA.  Significantly, we observed that "in promulgating the VWPA, Congress intended to `insure that the wrongdoer [be] required to the degree possible to restore the victim to his or her prior state of well-being."  Hand, 863 F.2d 1103.  We stated further that:

> There is no doubt that compensation for such
> expenditures is permissible under the VWPA,
> given that Congress desired for offenders "to
> undue the financial harm they have done
> [their victims]."

Hand, 863 F.2d at 1104-1105 (quoting S.Rep. No. 532, 97th Cong., 2d. Sess. 30, reprinted in 1982 U.S.Code Cong. & Admin. News 2515, 2536).

It is something considerably less than hyperbole to characterize the above-cited comments that appear in the legislative history of the VWPA as "sweeping." These comments aside, however, there is no doubt that the VWPA does not necessarily authorize a sentencing court to order restitution in an amount that represents a victim's entire loss. See Hughey v. United States, 495 U.S. 411, 413 (1990). Congress simply did not write the VWPA to fully satisfy the more ambitious purpose expressed in the legislative reports upon which Hand relies. The plain and unambiguous language of § 3663(b)(1) clearly limits the amount of restitution to the value of the lost property. Moreover, restitution ordered pursuant to the VWPA cannot compensate for losses which do not directly result from the offense of conviction, id.; United States v. Seligsohn, 981 F.2d 1418, 1421 (3d Cir. 1992) (adopting Hughey and stating, "we should take the Supreme Court at its word that the count of conviction controls the amount of restitution"), and this observation is wholly consistent with the result we reached in Hand, despite Hand's reliance on a more expansive reading of the VWPA, one which the government urges us to adopt here. It is important that we revisit our primary focus in Hand, which was that the government had lost five "hard-won convictions," as a direct result of Hand's misconduct. Hand, 863 F.2d at 1104. But for Hand's criminal conduct, the government would not have lost those convictions. Of critical importance is the fact that Hand was not required to pay for the expenses the government incurred in retrying the co-defendants, nor did she have pay restitution

to cover the cost of her own conviction; instead, she was only ordered to pay compensation for what the court viewed as the "property" the government lost as a result of Hand's crime, namely, the convictions. Thus, not even Hand attempts to give full effect to the expressions of congressional intent cited therein.

The plain language of the VWPA, as well as the reasoning adopted by other courts of appeal, leads us to conclude that absent specific statutory authority for an award of attorneys' fees, the amount of restitution ordered under the VWPA may not include compensation for legal expenses unless such costs are sustained as a direct result of the conduct underlying the offense of conviction.

Accordingly, we will reverse the district court's decision to include legal fees as part of the restitution ordered under the VWPA. Although such fees might plausibly be considered part of the estate's losses, expenses generated in order to recover (or protect) property are not part of the value of the property lost (or in jeopardy), and are, therefore, too far removed from the underlying criminal conduct to form the basis of a restitution order.

C.

We now turn to the district court's inclusion in the restitution amount the interest lost on certificates of deposit that were fraudulently acquired by Davis. Although we have previously held that the VWPA implicitly authorizes the district court to include postjudgment interest in a restitution order,

United States v. Kress, 944 F.2d 155, 160 (3d Cir. 1991), we have not considered the issue this case raises: whether § 3663(b)(1) authorizes the inclusion of prejudgment interest in a restitution award. See Kress, 944 F.2d at 159 n.7 (specifically reserving the question of whether prejudgment interest can be properly awarded under the VWPA).

We have, however, addressed the issue of prejudgment interest in the context of restitution ordered under the Federal Protection Act (FPA), 18 U.S.C. § 3651 (repealed November 1, 1987), which authorized a sentencing judge to order "restitution and reparation to aggrieved parties for actual damage or loss" as a term of probation. See United States v. Sleight, 808 F.2d 1012 (3d Cir. 1987). In Sleight, in concluding that prejudgment interest should not be included absent specific statutory authority, we based our decision on the fact that restitution under the FPA is imposed as a condition of probation and is, therefore, analogous to a criminal penalty. Sleight, 808 F.2d at 1020-21. It is, of course, well established that criminal penalties do not bear interest. Id. at 1020 (citing Rodgers v. United States, 332 U.S. 371, 376 (1947) and Pierce v. United States, 255 U.S. 398 (1921)).

Although the VWPA is likewise silent with respect to prejudgment interest, that silence need not be interpreted as "manifesting an unequivocal congressional purpose that the obligation shall not bear interest." Kress, 944 F.2d at 159 (quoting Rodgers, 332 U.S. at 373). Furthermore, restitution ordered under the VWPA is compensatory rather than punitive.

Awards are designed to compensate victims for their losses, rather than to serve retributive or deterrent purposes. See United States v. Rochester, 898 F.2d 971, 983 (5th Cir. 1990). We do not believe that the inclusion of prejudgment interest is comparable to a criminal penalty. Rather, it is an aspect of the victim's actual loss which must be accounted for in the calculation of restitution in order to effect full compensation. Lost interest translates into lost opportunities, as it reflects the victim's inability to use his or her money for a productive purpose. Accordingly we find that the district court's incorporation of prejudgment interest in the restitution amount was proper to effect full compensation.

### III.

Davis also contends that the district court erred in concluding that, in spite of her indigence at the time of sentencing, she stood a realistic chance of acquiring the ability to pay the amount of restitution ordered.

We have held that in arriving at a proper amount for purposes of restitution, a district court must make factual findings concerning (1) the amount of loss sustained by the victims, (2) the defendant's ability to make restitution, and (3) "how the amount of . . . restitution imposed . . . relate[s] to any loss caused by the conduct underlying the . . . offenses for which [defendant] remain[s] convicted." United States v. Logar, 975 F.2d 958, 961 (3d Cir. 1992) (citations omitted). Although "restitution may not be ordered in an amount that a defendant cannot realistically pay," Sleight, 808 F.2d at 1021,

the suggestion that a court cannot impose an order for restitution on an indigent defendant is, quite simply, without foundation. Logar, 975 F.2d at 962. We recognize that there may be a significant difference between a defendant's financial condition at sentencing and his or her ability to repay in the future losses sustained by the victim. As a result, we have instructed district courts to make specific findings of fact not only concerning a particular defendant's current financial status, but also as to his or her capacity to earn income in the future, before arriving at an appropriate amount of restitution. Id.

The possibility of repayment, however, cannot be based solely on chance. Id. (citing United States v. Rogat, 924 F.2d 983, 985 (10th Cir.), cert. denied, 111 S.Ct. 1637 (1991)). Cf. United States v. Seale, 20 F.3d 1279, 1286 (3d Cir. 1994) ("In attempting to predict future ability to pay, district courts must be realistic and must avoid imposing a fine when the possibility of a future ability to pay is based merely on chance."). A sentencing court must fashion an obligation that a defendant realistically can be expected to fulfill. See Sleight, 808 F.2d at 1021. Thus, in Logar, we concluded that:

> if it is realistic that a defendant may inherit a substantial sum from a well-off relative or has a story to write that will be a bestseller, then the district court would be entitled to consider these possible additional sources of income in fashioning a restitution order.

Logar, 975 F.2d at 964.

In this case, the district court correctly considered Davis' potential for future income based on her then-pending probate claims against the Rice estate and her book, "Astarte: A True Story,"[6] in ordering restitution. Not only is Davis a named beneficiary in Rice's handwritten will which has been admitted to probate in the Superior Court of California, she has challenged that will, claiming that somewhere among her effects is a more recent will which leaves her the bulk of the estate. She also claims that as Rice's common-law wife she is entitled to share in his estate, which is valued at more than $800,000. Based on the above, we conclude that Davis has a better-than-chance opportunity for future earnings, and that the district court's determination to that effect was correct. It follows, then, that the district court in this case properly balanced the victim's interest in compensation against Davis' financial resources and exercised sound discretion in determining an appropriate amount of restitution.

---

[6]. Davis' story about her illegal activities has already been the subject of two nationally syndicated television news magazine programs.

IV.

Finally, Davis argues that the district court erred in ordering restitution in the V.I. Case pursuant to the V.I.C. § 3721. The V.I. restitution statute provides in pertinent part:

> Restitution to Victims:  .  .  .  If the court places the person on probation, the court shall require restitution designed to compensate the victim's pecuniary loss resulting from the crime to the extent possible, unless the court finds there is a substantial reason not to order restitution as a condition of probation.

5 V.I.C. § 3721.

Davis correctly claims that probation is a prerequisite of an order of restitution and that if a defendant does not receive probation, restitution cannot be imposed. We note, however, that in addition to receiving a ten-year term of imprisonment in the V.I. Case, Davis was also placed on probation for a period of five years. In fact, the very obligation she challenges was ordered as a condition of her probation. Thus, the district court clearly acted with authority when it ordered Davis to pay restitution to the Rice estate.

V.

For the reasons set forth above, we will affirm, in its entirety, the district court's restitution order in the V.I. Case. In addition we will affirm the district court's order of restitution in the U.S. Case, made pursuant to the VWPA, in all respects with the exception of its inclusion of legal fees. That portion of the order will be vacated, and the matter remanded to

the district court for amendment of the amount of restitution consistent with this opinion.