843 F.2d 679
 27 ERC 1537, 18 Envtl. L. Rep. 20,747
 CONCERNED CITIZENS OF BRIDESBURG: Coppola, James, et al.,
v.
PHILADELPHIA WATER DEPARTMENT; the City of Philadelphia;
Marrazzo, William J., in his capacity as Water Commissioner
of Philadelphia; White, James Stanley, in his capacity as
Managing Director of the City of Philadelphia; Rohm & Haas
Company; and Allied Corporation
Appeal of CITY OF PHILADELPHIA, William J. Marrazzo and
James Stanley White.
 No. 87-1092.
 United States Court of Appeals,
Third Circuit.
 Argued Oct. 20, 1987.
Assigned Dec. 21, 1987.
Decided March 31, 1988.
Rehearing and Rehearing In Banc Denied April 25, 1988.
 
 Handsel B. Minyard, City Solicitor, Denise D. Colliers (argued), Divisional Deputy City Solicitor, Frederick C. Bader, Asst. City Solicitor, City of Philadelphia Law Dept., Philadelphia, Pa., for appellants.
 Jerome Balter (argued), Public Interest Law Center of Philadelphia, Philadelphia, Pa., for appellees.
 Before HIGGINBOTHAM, SCIRICA and GARTH, Circuit Judges.
 OPINION OF THE COURT
 A. LEON HIGGINBOTHAM, Jr., Circuit Judge.
 
 
 1
 This appeal rises from an action brought by the residential neighbors of an urban sewage treatment facility. The appeal concerns a contempt citation issued against appellants (together, "the City" or "Philadelphia") for violating an injunction previously entered by the district court. We hold that the district court at all times had federal subject matter jurisdiction over this action and that it did not err when it held Philadelphia in civil contempt. Accordingly, we will affirm the judgment of the district court in all respects.
 
 I. BACKGROUND
 
 2
 Appellees, a community organization named the Concerned Citizens of Bridesburg and the individual residents who constitute it (collectively, "the Citizens") brought this action in 1985 under the citizen lawsuit provision of the federal Clean Air Act, 42 U.S.C. Sec. 7604 (1982). The Citizens live in the Bridesburg section of Philadelphia. Their neighborhood surrounds the Northeast Water Pollution Control Plant ("the Northeast Plant"), a sewage treatment and disposal facility that serves the northeastern areas of Philadelphia. The Citizens' action alleged that Philadelphia was operating the Northeast Plant in violation of state and municipal odor regulations that are incorporated in the Pennsylvania State Implementation Plan ("the Pennsylvania SIP"), 40 C.F.R. Sec. 52.2020 (1987). The Pennsylvania SIP is a federal regulation promulgated pursuant to the Clean Air Act, 42 U.S.C. Sec. 7610 (1982). The action went to trial in May, 1986. Two months later, the district court, in an order that was accompanied by a comprehensive opinion, enjoined Philadelphia from, inter alia, operating the Northeast Plant in violation of the applicable odor emission regulations. Concerned Citizens of Bridesburg v. City of Philadelphia, 643 F.Supp. 713, 730-31 (E.D.Pa.1986). Philadelphia took no appeal from this injunctive order.
 
 
 3
 On October 14, 1986, the Citizens moved that Philadelphia be found in civil contempt for violating the district court's injunction. At the hearing on this motion, the Citizens presented evidence demonstrating that, since August 1, 1986, air pollution inspectors working for the City of Philadelphia's Air Management Services had issued twenty-eight notices of violation against the Northeast Plant. During the time period from August 1 through October 14, the Northeast Plant had also been notified of additional resident complaints, filed pursuant to the injunction, for which Air Management Services did not issue odor violation notices.
 
 
 4
 On January 28, 1987, the district court found that Philadelphia had "repeatedly" violated the injunction and declared the City to be in civil contempt. Concerned Citizens of Bridesburg v. City of Philadelphia, Civil No. 85-14, mem. op. & order (E.D.Pa. Jan. 28, 1987), reprinted in Appendix ("App.") at 1967-82. To coerce Philadelphia to comply with the injunction, the district court at this time imposed a civil contempt sanction. It required Philadelphia (1) to employ an independent engineer to undertake a comprehensive study of the Northeast Plant and to make recommendations for the prevention of malodorous emissions therefrom, and (2) to pay $10,000 into the district court registry whenever the City violated the terms of the injunction three or more times within any thirty-day period. The district court also stated that if compensatory damages were subsequently awarded to persons injured by Philadelphia's contumacious actions, such damage awards would be defrayed by any coercive penalties that Philadelphia had paid into the district court's registry. Philadelphia took this appeal from the contempt judgment.
 
 II. SUBJECT MATTER JURISDICTION
 
 5
 The first issue that we must address concerns the jurisdictional basis of the district court's adjudication of the underlying dispute. Since this is a question of law, our standard of review is plenary.
 
 
 6
 From the time the Citizens first filed their complaint, Philadelphia has contested the district court's subject matter jurisdiction over the action. The district court first dealt with this issue when it denied Philadelphia's pretrial motion to dismiss on the grounds that the odor regulations in the Pennsylvania SIP were invalid and unenforceable. Concerned Citizens of Bridesburg v. Philadelphia Water Dep't, Civil No. 85-14, mem.op. & order (E.D.Pa. Apr. 23, 1985), reprinted in App. at 122-43. Philadelphia renewed this motion at the start of trial. Joint Motion Of Defendants And Defendant-Intervenors For Summary Judgment Or In The Alternative For Dismissal, reprinted in App. at 389-91. The district court denied it from the bench.
 
 
 7
 After the trial was completed, the United States Environmental Protection Agency ("EPA") on May 20, 1986, published a regulation deleting the odor regulations from the Pennsylvania SIP. 51 Fed.Reg. 18,438-40 (1986), reprinted in App. at 1345-47. This regulation took effect on June 19, 1986. Notwithstanding this amendment to the regulatory scheme, the district court, in its judgment of July 28, 1986, held that it had subject matter jurisdiction over the Citizens' federal claims because they were valid at least until after the trial was completed. Concerned Citizens of Bridesburg, No. 85-14, op. & order at 33-34 (E.D.Pa. July 28, 1986), reprinted in App. at 1397-98. In addition, the district court found that the Citizens' complaint implicitly made out a claim of common law nuisance sufficient to give the district court subject matter jurisdiction. Id. at 37, reprinted in App. at 1401. These holdings were aspects of the judgment that Philadelphia did not appeal. Nonetheless, it now attempts, on this appeal from the contempt judgment of January 28, 1987, to attack collaterally the district court's legal conclusions regarding subject matter jurisdiction.
 
 
 8
 Philadelphia's claim that the district court lacked subject matter jurisdiction to enter the underlying injunction is now moot. On December 18, 1987, after we heard argument on this appeal, another panel of this Court held that the EPA's attempt to modify the Pennsylvania SIP by directly deleting the odor regulations was procedurally invalid under the applicable section of the Clean Air Act. Concerned Citizens of Bridesburg v. United States EPA, 836 F.2d 777 (3d Cir.1987). That decision means that the EPA's attempt to delete the odor regulations from the Pennsylvania SIP is, and has always been, a legal nullity. See, e.g., United States v. Larionoff, 431 U.S. 864, 873 n. 12, 97 S.Ct. 2150, 2156 n. 12, 53 L.Ed.2d 48 (1977); Manhattan General Equip. Co. v. Commissioner, 297 U.S. 129, 134, 56 S.Ct. 397, 400, 80 L.Ed. 528 (1936) ("A regulation which ... operates to create a rule out of harmony with the statute is a mere nullity."). Accordingly, the district court's original pretrial determination that the Citizens' complaint alleged a cognizable federal claim under the Pennsylvania SIP, Concerned Citizens of Bridesburg, Civil No. 85-14, mem. op. & order at 13 (E.D.Pa. Apr. 23, 1985) ("it is clear beyond doubt that both the state and city odor regulations are currently part of the Pennsylvania SIP that has been approved by the EPA"), reprinted in App. at 135, is legally correct in this Circuit.
 
 
 9
 In light of the legal developments since this appeal was briefed and argued, we will not determine whether Philadelphia could collaterally attack the district court's subject matter jurisdiction in this appeal from a contempt judgment. We also will express no opinion regarding the hypothetical question whether the district court would have had subject matter jurisdiction over the Citizens' action if EPA had properly rescinded the odor regulations contained in the Pennsylvania SIP after trial but before the district court entered its final judgment in the underlying action.
 
 III. THE CONTEMPT JUDGMENT
 
 10
 Philadelphia claims that, because it did not violate the injunction, the contempt judgment was entered in error. We disagree. The record amply demonstrates that the Citizens satisfied their burden of showing the City's civil contempt by "clear and convincing evidence," Fox v. Capital Co., 96 F.2d 684, 686 (3d Cir.1938), for "there is [no] ground to doubt the wrongfulness of the [City's] conduct" between the time of the injunctive order and the date the contempt judgment was entered. Id.; cf. Quinter v. Volkswagen of Am., 676 F.2d 969, 974 (3d Cir.1982) ("Although it came within a scintilla of doing so, [plaintiff] Volkswagen has not satisfied the 'clear and convincing evidence' standard set forth by this circuit in Fox ...." ).
 
 
 11
 The City's second claim is that, since the record contained no evidence of the Citizens' actual losses, the district court erroneously imposed a coercive penalty for civil contempt. This claim rests upon a misreading of McDonald's Corp. v. Victory Investments, 727 F.2d 82 (3d Cir.1984). In that decision, we explained that "civil contempt may be employed to coerce the defendant into compliance with the court's order and to compensate for losses sustained by the disobedience.... In the latter instance, a fine may be imposed payable to the complainant, but it must be based upon evidence of complainant's actual loss." Id. at 87 (emphasis added); accord Latrobe Steel Co. v. United Steelworkers of Am., AFL-CIO, 545 F.2d 1336, 1344 (3d Cir.1976). The City's argument gets the distinction between coercive and compensatory contempt judgments exactly backward. See Brief of Appellants at 42-43. Since the district court explicitly imposed a coercive sanction against Philadelphia, Concerned Citizens of Bridesburg, No. 85-14, mem. op. at 12 (E.D.Pa. Jan. 28, 1987), reprinted in App. at 1978, no evidence of actual loss by the Citizens was required.
 
 
 12
 The City's final claim argues, inter alia, that the possibility that compensatory damages will be paid out of coercive fines imposed pursuant to this contempt judgment runs afoul of the sections of Pennsylvania's Political Subdivision Tort Claims Act that apply to actions against local parties, 42 Pa.Cons.Stat.Ann. Secs. 8541-64 (Purdon 1982). Since the Citizens' underlying action is based upon the federal Clean Air Act and the contempt order upon Fed.R.Civ.P. 70, however, the Supremacy Clause defeats the City's argument. See U.S. Const. art. VI, Sec. 2.
 
 IV. CONCLUSION
 
 13
 For the foregoing reasons, we will affirm the judgment of the district court.
 
 GARTH, Circuit Judge, concurring:
 
 14
 I am in full accord with the majority opinion, with the exception of the manner in which it has chosen to reject the City of Philadelphia's claim that the City need not comply with the district court's contempt order because that order runs afoul of the Pennsylvania Tort Claims Act, 42 Pa.Cons.Stat.Ann. Secs. 8541-64 (Purdon 1982). The City's argument is predicated on its anticipation that some of the monies it is required to pay as a result of the district court's contempt order may ultimately be utilized to compensate property owners.
 
 
 15
 The majority has resolved this issue by invoking the Supremacy Clause of the United States Constitution. I have difficulty understanding the relevance of such a disposition in the context of this case. Moreover, in my opinion, it is inappropriate to resort to a constitutional analysis here in order to resolve the City's contentions. While the City may very well be immunized by the Pennsylvania Tort Claims Act where a tort has been committed by the City, the Act does not purport to, nor can it, immunize the City from paying fines imposed by the district court for the City's failure to comply with the court's order. In short, the Pennsylvania Tort Claims Act simply does not apply to a court's valid imposition of a coercive penalty.
 
 
 16
 As a consequence, the City's invocation of Pennsylvania's Tort Claims Act is without merit, and must be resolved against the City. However, I do not believe the majority is correct in deciding this matter on a constitutional ground where a more narrow resolution of this issue may be based on the inapplicability of the Pennsylvania statute. See Hagans v. Lavine, 415 U.S. 528, 543, 94 S.Ct. 1372, 1382, 39 L.Ed.2d 577 (1974).
 
 
 17
 In all other respects, I concur in the majority's opinion.