

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-6-1994

# Woods, Inc. v. Woods, et al.

Precedential or Non-Precedential:

Docket 93-3314

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"Woods, Inc. v. Woods, et al." (1994). *1994 Decisions.* Paper 73.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/73

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


NOS. 93-3314 and 93-3333


ROBIN WOODS INC., a Pennsylvania Corporation
v.

ROBIN F. WOODS, an individual
ALEXANDER DOLL COMPANY, a New York corporation
PITTSBURGH SEED FUND

ROBIN F. WOODS and THE ALEXANDER DOLL COMPANY,
Appellants


On Appeal From the United States District Court
For the Western District of Pennsylvania
(D.C. Civil Action No. 91-02186)


Argued January 12, 1994

BEFORE:  STAPLETON, COWEN and ALITO, Circuit Judges

(Opinion Filed July 6, 1994)



Bela A. Karlowitz
Robert X. Medonis (Argued)
Karlowitz & Cromer
Suite 800, USX Tower
Pittsburgh, PA  15219

Attorneys for Appellee

Gary A. Rosen (Argued)
Hangley, Connolly, Epstein, Chicco,
Foxman & Ewing
1515 Market Street
9th Floor
Philadelphia, PA  19102

Attorneys for Appellants

                    Robin F. Woods and
                    The Alexander Doll Company



                    OPINION OF THE COURT



STAPLETON, Circuit Judge:

        The district court sanctioned appellants for violating
a preliminary injunction.  Appellants dispute both the finding of
contempt and the appropriateness of the sanctions imposed.  We
agree with the district court that appellants failed to comply
with the preliminary injunction, but we find that one of the
sanctions the district court imposed is inappropriate.  We thus
will affirm in part and reverse in part.


                              I.

        In 1983, Robin F. Woods ("Mrs. Woods") founded Robin
Woods, Inc. ("RWI"), a doll manufacturer.  RWI's dolls were
popular and rapid growth ensued.  Mrs. Woods obtained capital to
finance RWI's expansion by selling most of her holdings in RWI to
investors, among which was the Pittsburgh Seed Fund ("the Seed
Fund").  The Seed Fund required Mrs. Woods to enter into a
written employment agreement and a non-competition/non-disclosure
agreement with RWI, as well as to assign her copyrights to RWI.

        Even though RWI's sales continued to increase
throughout the 1980s, the company never turned a profit.  Unhappy
with RWI's financial performance, the Seed Fund in 1990
instructed its representatives on RWI's board to remove Mrs.

Woods from her management role but to continue to employ her as a doll designer.  Following Mrs. Woods' demotion, RWI's product line was also altered and new distribution channels were created.  The Seed Fund's changes proved catastrophic, leading RWI to the verge of bankruptcy.  Mrs. Woods offered to return as CEO to try to save RWI, but the Seed Fund rebuffed her.  Mrs. Woods resigned from RWI on December 6, 1991, to go to work for one of RWI's competitors, the Alexander Doll Company ("Alexander").

RWI filed suit against Mrs. Woods and Alexander on December 24, 1991, alleging Lanham Act violations, injury to business reputation, breach of contract, breach of fiduciary duty, tortious interference, breach of employment contract, and unfair competition.  RWI also sought a preliminary injunction to bar Mrs. Woods from employment with Alexander or from using the name "Robin Woods" in connection with the design, manufacture, and sale of dolls.

After hearing four days of testimony, a magistrate recommended that Mrs. Woods be enjoined from involvement in the collectible doll industry.  The district court's preliminary injunction expanded the magistrate's restrictions on Mrs. Woods by limiting use of her name:

> 1.  Defendants [Mrs. Woods and Alexander] . . . are enjoined from characterizing, promoting or advertising either orally or in writing, that any dolls manufactured by Alexander Doll Company for which Robin F. Woods provides any services
>
> . . .
>
> (g) are signed or otherwise identified with Robin F. Woods.
>
> . . .

>     5.  Defendants . . . are enjoined from
>     designating or identifying any specific dolls
>     manufactured by any company, including but
>     not limited to Alexander Doll Company, for
>     which Robin F. Woods provided services.
>                          . . .
>     8.  Defendants . . . are enjoined from
>     identifying Robin F. Woods as having provided
>     any services for any dolls manufactured by
>     any company, including but not limited to the
>     Alexander Doll Company, such as on the
>     product, product tag, box, or in connection
>     with any advertising or promotion of the
>     dolls.

Mrs. Woods consulted counsel to determine what work she could do at Alexander and still comply with the preliminary injunction.  Counsel told her that she could design play dolls (but not collectible dolls) if she used a nom de plume (but not her name).  Mrs. Woods took the name Alice Darling and began to create a new line of play dolls for Alexander called "Let's Play Dolls."

An announcement of Mrs. Woods' new role was prepared for distribution in doll industry magazines, letters to retailers, and trade show posters.  The announcement stated:

>                ALEXANDER DOLL COMPANY
>             is pleased to announce that
>               MRS. ROBIN F. WOODS*
>                    [Photograph]
>           is exclusively associated with the
>                 LET'S PLAY DOLLS
>         division of the Alexander Doll Company
>               and will be creating dolls
>                 for play under the name
>                    ALICE DARLING
>
>     *Mrs. Woods was formerly associated with
>     Robin Woods, Inc. (RWI).  Mrs. Woods resigned
>     from RWI in December 1991.  A federal court,
>     on February 7, 1992, preliminarily ruled that
>     RWI owns the trade name "Robin Woods" and

that Mrs. Woods may not use her name to identify any dolls which she designs. Accordingly, Mrs. Woods has assumed a new trade name "Alice Darling" to identify the dolls she designs for the Alexander Doll Company.

RWI filed a motion for contempt sanctions, arguing that the preliminary injunction forbade Mrs. Woods' involvement with Alexander and Let's Play Dolls. After discovery and a four-day hearing, the district court rejected most of RWI's contentions, finding only one violation of the preliminary injunction: dissemination of the Alice Darling announcement. The district court awarded RWI $107,000 in damages, which reflected the time and expense RWI's management incurred preparing for the contempt proceeding. Attorneys' fees of $68,707.52 were also awarded. Mrs. Woods and Alexander now appeal.

The district court had jurisdiction over RWI's claims under 28 U.S.C. § 1338 and 28 U.S.C. § 1367. This court has appellate jurisdiction pursuant to 28 U.S.C. § 1291. See United States Steel Corp. v. Fraternal Ass'n of Steel Haulers, 601 F.2d 1269, 1272 (3d Cir. 1979).

II.

The district court found that Mrs. Woods and Alexander did not respect the injunction in three ways. First, "[d]efendants promoted and advertised that dolls manufactured by Alexander were designed by Mrs. Woods by identifying 'Alice Darling' as Mrs. Woods and as the designer of 'Let's Play

Dolls.'"  <u>Robin Woods, Inc. v. Woods</u>, 815 F. Supp. 856, 868 (W.D. Pa. 1992).  This, the district court said, violated paragraph one of the injunction which forbids "promoting or advertising . . . dolls manufactured by Alexander . . . which . . . are . . . identified with Robin F. Woods."  Second, "[d]efendants, by their promotional campaign, designated or identified specific dolls manufactured by Alexander for which Mrs. Woods provided services."  <u>Id.</u>  This, the district court said, violated paragraph five of the injunction which forbids "designating or identifying any specific dolls . . . for which Robin F. Woods provided services."  Third, "[d]efendants identified Mrs. Woods as having provided services for the dolls of the 'Let's Play Dolls' line . . . in . . . promotion of the doll."  <u>Id.</u>  This, the district court said, violated paragraph eight of the injunction which forbids defendants from "identifying Robin F. Woods as having provided any services for any dolls manufactured by . . . Alexander . . . in connection with . . . promotion of the doll."  <u>Id.</u>

Mrs. Woods and Alexander attack the district court's ruling, noting that civil contempt must be proved by clear and convincing evidence; where there is ground to doubt the wrongfulness of the conduct, they insist, there is no contempt. They further claim that they acted in good faith, with the advice of counsel, and without an intent to arrogate RWI's goodwill. Finally, they contend that their use of "Robin Woods" was arguably outside the scope of a vague injunction and consistent with the purpose of the injunction and that this substantial

compliance with the injunction renders the finding of contempt inappropriate.  We find these arguments unpersuasive.

Contempt, as Mrs. Woods and Alexander correctly note, must be proved by clear and convincing evidence:

> The plaintiff has a heavy burden to show a defendant guilty of civil contempt.  It must be done by "clear and convincing evidence," and where there is ground to doubt the wrongfulness of the conduct, he should not be adjudged in contempt.

Quinter v. Volkswagen of America, 676 F.2d 969, 974 (3d Cir. 1982) (quoting Fox v. Capital Co., 96 F.2d 684, 686 (3d Cir. 1938)).  In this case, however, there is no ground to doubt the wrongfulness of the conduct -- the injunction forbade identification of Mrs. Woods with Alexander's dolls in promotional materials and the Alice Darling announcement made such an identification.

Contrary to Mrs. Woods' and Alexander's assertions, good faith is not a defense to civil contempt.  We recently held in Harley-Davidson, Inc. v. Morris, 19 F.3d 142, 148-49 (3d Cir. 1994), that "willfulness is not a necessary element of civil contempt," and, accordingly, that "evidence . . . regarding . . . good faith does not bar the conclusion . . . that [the defendant] acted in contempt."

Contemnors, as Mrs. Woods and Alexander correctly note, are sometimes excused when they violate vague court orders: there is a "longstanding salutary rule in contempt cases that ambiguities and omissions in orders redound to the benefit of the person charged with the contempt."  Eavenson, Auchmuty &

Greenwald v. Holtzman, 775 F.2d 535, 544 (3d Cir. 1985).  This well established principle does not aid the appellants here, however.  While we too perceive some vagueness in paragraph 5 of the injunction, the prohibitions that paragraphs 1 and 8 were intended to impose seem crystal clear to us.  As paragraph 8 puts it:  "Defendants . . . are enjoined from identifying Robin F. Woods as having provided any services for any dolls manufactured by . . . Alexander Doll Company . . . in connection with any . . . promotion of the dolls."

Some courts, as Mrs. Woods and Alexander correctly note, have recognized a substantial compliance defense to contempt citations:

> [S]ubstantial compliance with a court order is a defense to an action for civil contempt. . . . If a violating party has taken 'all reasonable steps' to comply with the court order, technical or inadvertent violations of the order will not support a finding of civil contempt.

General Signal Corp. v. Donallco, Inc., 787 F.2d 1376, 1379 (9th Cir. 1986).  Even if this court were to recognize substantial compliance as a defense to contempt, however, it would not apply to Mrs. Woods and Alexander.  Although Mrs. Woods and Alexander acted in good faith and on the advice of counsel, see Robin Woods, Inc. 815 F. Supp. at 875, their violation was not technical or inadvertent -- they consciously chose to associate Mrs. Woods with dolls that Alexander would manufacture.  The district court's contempt citation thus must stand.

III.

Mrs. Woods and Alexander dispute the sanctions that the district court imposed on them, maintaining that it was an abuse of discretion to award RWI $68,505.72 in attorneys' fees and $107,000 in damages for the time and expense that RWI's management incurred in preparing for the contempt proceeding. "The standard of our review of a district court sanction for civil contempt is whether the district court abused its wide discretion in fashioning a remedy." Delaware Valley Citizens' Council v. Pennsylvania, 678 F.2d 470, 478 (3d Cir. 1982), cert. denied, 459 U.S. 969 (1982).

A.

RWI sought attorneys' fees of $104,062.53 plus an expert witness fee of $11,976.00. The district court awarded only $68,707.52, because "plaintiff was largely unsuccessful on its motion for contempt, sanctions, and attorneys' fees." Mrs. Woods and Alexander maintain that attorneys' fees cannot be awarded to RWI because their conduct, even if contumacious, was not willful -- they acted in good faith on the advice of counsel without intent to harm RWI.

Sanctions for civil contempt serve two purposes: "to coerce the defendant into compliance with the court's order and to compensate for losses sustained by the disobedience." McDonald's Corp. v. Victory Investments, 727 F.2d 82, 87 (3d Cir. 1984). Compensatory awards seek to ensure that the innocent party receives the benefit of the injunction:

> the Court will be guided by the principle that sanctions imposed after a finding of civil contempt to remedy past noncompliance with a decree are not to vindicate the court's authority but to make reparation to the injured party and restore the parties to the position they would have held had the injunction been obeyed.

Hudson Transit Lines, Inc. v. Freund, 509 F. Supp. 1172, 1178 (E.D.N.Y. 1981).

Based on this understanding of the functions served by sanctions for civil contempt, we reject the notion that a finding of willfulness is a prerequisite to an award of attorneys' fees against the violator of an injunction. As the Court of Appeals for the Fifth Circuit explained in Cook v. Ochsner Found. Hosp., 559 F.2d 270, 272 (5th Cir. 1977):

> It matters not whether the disobedience is willful[;] the cost of bringing the violation to the attention of the court is part of the damages suffered by the prevailing party and those costs would reduce any benefits gained by the prevailing party from the court's violated order. Because damages assessed in civil contempt cases are oftentimes compensatory (instead of coercive) the mental state of the violator should not determine the level of compensation due.

Only with an award of attorneys' fees can RWI be restored to the position it would have occupied had Mrs. Woods and Alexander complied with the district court's injunction. Accordingly, accepting both the district court's findings regarding good faith and advice of counsel and the appellants' assertion that they intended no harm to RWI, we find no basis for disturbing the award of attorneys' fees.

B.

The district court ordered Mrs. Woods and Alexander to pay RWI $107,000 as compensation for "management's time and expense in preparing for the contempt litigation." Robin Woods, Inc., 815 F. Supp. at 875. The court explained its decision in this way: "A successful party proving contempt is entitled to recover, by way of civil fine, the expense of investigating the violation of the order [and] preparing for and conducting the contempt proceeding, in addition to attorneys' fees." Id.

The $107,000 figure was based solely on the following testimony from RWI executive David Lamont:

> Q. You said you spent some management time preparing for this hearing . . . . . Before coming here did you examin[e] the company's books and records to determine how much time was expended in preparing for this hearing today for the sanctions?
> A. Yes, I did.
>                              . . .
> Q. Let's go to how much time. You said you studied the time and you are familiar with the cost of your time. Is that correct?
> A. Sure. . . . I look at my payroll records, sure.
> Q. You are the chief financial officer of the company. Is that correct?
> A. Yes.
> Q. Now, can you tell this court how much money was expended by the Robin Woods Company on management time, in-house management time, in preparing for the sanctions hearing today?
>                              . . .
> A. Through the spring and summer, I kept track of the rough proportions of time that each of my key people were spending preparing for this case. I tracked it on a month-by-month basis, and through October it adds up to about $107,000.

Just as attorneys' fee awards are "remedial and designed to compensate complainants for losses incurred as a result of the contemnors' violations," Roe v. Operation Rescue, 919 F.2d 857, 869 (3d Cir. 1990), so too are awards to cover the other expenses involved in demonstrating violations. NLRB v. Local 825, Int'l Union of Operating Eng'rs, AFL-CIO, 430 F.2d 1225, 1229 (3d Cir. 1970), cert. denied, 401 U.S. 976 (1971). Thus, there can be no doubt that the district court had the authority to order Mrs. Woods and Alexander to compensate RWI for the time and expense its management incurred in enforcing the district court's injunction.

Turning to the amount of the award, we note that the district court enjoys wide, but not unlimited, discretion in fashioning appropriate compensatory sanctions:

> The framing of sanctions for civil contempt is committed to the sound discretion of the trial court. . . . But this discretion is not unlimited. Compensatory sanctions . . . must not exceed the actual loss suffered by the party that was wronged.

Elkin v. Fauver, 969 F.2d 48, 52 (3d Cir. 1992), cert. denied, 113 S. Ct. 473 (1992).

We believe the district court in this case stepped over the line that separates acceptable and unacceptable exercises of discretion. It reduced its award of counsel fees to reflect RWI's limited success and then, without explanation, proceeded to award all of the other expenses incurred by RWI in connection with its contempt motion. For this reason, on the basis of the record, the award of other expenses without an adjustment for the

limited degree of RWI's success can only be characterized as arbitrary and we have no choice but to vacate it.[1]

IV.

We will reverse the judgment of the district court and remand with instructions to enter an order finding appellants in contempt and awarding attorneys' fees of $68,707.52. We leave to the discretion of the district court whether to reopen the record and give further consideration to the application for expenses.

---

[1] Because we thus find the award of expenses arbitrary, and because Mr. Lamont's testimony provides no basis for allocating expenses between successful and unsuccessful contentions, it is unnecessary for us to reach the issue of whether that testimony, given its conclusory nature, would otherwise provide sufficient support for an award. We regard that issue as a very close one and express no opinion on it.